ROBERTSON OIL COMPANY, INC., Appellee,

v.

PHILLIPS PETROLEUM COMPANY, Appellant.

No. 88-1266.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1988.

Decided March 31, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc June 29, 1989.

William H. Sutton, Little Rock, Ark., for appellant.

Julius Glickman, Houston, Tex., for appellee.

Before JOHN R. GIBSON, Circuit Judge, and BRIGHT and HENLEY, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Phillips Petroleum Company appeals from a verdict against it which awarded Robertson Oil Company $750,000 in actual damages and $5,000,000 in punitive damages. The jury in this diversity action found that Phillips was liable for fraud, breach of its duty of good faith and fair dealing, tortious interference with the relationship between Robertson and its client, Spe–Dee Mart, and negligence. The jury failed to agree on whether Phillips had breached an oral contract, and on this issue a mistrial was declared. The district court on post-trial motions entered a judgment notwithstanding the verdict on the breach of the duty of good faith and fair dealing theory. For reversal Phillips argues principally that the evidence was insufficient to support a verdict of fraud and tortious interference, that as a matter of law Phillips was not negligent nor did it breach an oral contract, and that the verdicts were inconsistent. Phillips also contests the general verdict on compensatory and punitive damages and attacks the constitutionality of the punitive damage award. We affirm the district court's rulings that there were submissible claims of fraud, tortious interference with the relationship between Robertson and Spe–Dee Mart, and negligence. We conclude, however, that both the inconsistencies between the findings of negligence and fraud, and the judgment notwithstanding the verdict on the breach of duty of good faith and fair dealing theory, undermine the basis for the jury's punitive damage award, and we must remand these issues for retrial. As the tortious interference claim supports the actual damages, we affirm the award of actual damages.

## I.

Robertson Oil, solely owned and managed by Butch Robertson, is an independent distributor or jobber of petroleum products in the area of Fayetteville, Arkansas. For seven years, Robertson sold gasoline to twenty-three Spe–Dee Mart outlets, which accounted for 65% of Robertson's total business. Phillips' gas is marketed by jobbers on a branded and unbranded basis. Gas is considered branded if the Phillips trademark and logo are exhibited, and unbranded if the outlet, such as Spe–Dee Mart, displays its own logo. During the seven-year period, Spe–Dee Mart bought approximately 99% of its gas through Robertson, all of which was unbranded. In May of 1984 Spe–Dee Mart asked Robertson to convert all twenty-three Spe–Dee Mart stores from unbranded to branded Phillips outlets. Robertson immediately telephoned Jerome Lewis, the regional sales manager for Phillips, and told him of Spe–Dee Mart's desire to be branded by Phillips. Robertson testified that Lewis, who admittedly had the final authority to approve the requested branding of Spe–Dee Mart, answered: "There will be no problem with it. If it meets our image standards, we'll do it." Robertson testified that Lewis went on to say that Robertson should submit a letter through normal channels and "when it got to him he would approve it." (Tr., Vol. 1, 42, 54, 112). Robertson then sent a letter regarding branding to Dave Howard, the Phillips marketing representative, as is consistent with formal operating procedures.

Robertson testified that he spoke with Lewis by telephone on several occasions during the months of June through August, 1984, and that on each occasion Lewis assured Robertson that all twenty-three of the Spe–Dee Mart stores would be branded by Phillips. Robertson summarized Lewis's response in the several calls by testifying that when Lewis was asked about branding, he stated: "Don't worry about it, it's taken care of," and "It's no problem." (Tr. Vol. 1, 54). Robertson testified that at a Memorial Day golf outing arranged by Robertson in Tulsa, Oklahoma, he asked Lewis about the status of his proposal and Lewis said "it was in the mill" and he would "be over in October and take care of it." (Tr. Vol. 1, 57). Neither Lewis, Howard, nor Bob Likens, also an agent of Phillips, disclosed to Robertson at this time that they were privately discussing among themselves their reservations on the branding deal. Although Howard prepared a proposed memo to be sent to Robertson

revealing Phillips' intentions concerning the branding agreement, Howard testified that he never sent it.

Robertson then scheduled a meeting for October, 1984 in Fayetteville between Robertson, Spe–Dee Mart, and Phillips, to formally close the agreement to brand the Spe–Dee Mart stores. The day before the meeting, Lewis informed Robertson that only three of the twenty-three Spe–Dee Mart stores could be branded because they were giving John Johnson, the Phillips jobber in Springdale, Arkansas, six months to exclusively develop the Rogers territory.

The next day Lewis, Likens, and Howard attended the scheduled meeting with Robertson and Spe–Dee Mart's owners, Hoyet and Stanley Greenwood. There, Lewis told the Greenwoods that Phillips was not going to brand all of their stores, but only three. Likens testified that Lewis then informed the Greenwoods that "they would take a look down the road again to see if * * * [they] were happy, if there had been any improvements in Butch's performance, and if Greenwood performed, then * * * [they] would consider others at a later date." (Tr. Vol. 3, 110). The Greenwoods reached the conclusion during this meeting that Phillips "had a problem" with Robertson and that he was "probably insolvent" because they could think of no other reason why Phillips would not brand all of the Spe–Dee Mart stores. (Tr. Vol. 2, 2). Greenwood also testified that he felt Phillips did not want their business. After the meeting, the Greenwoods began to search for another refiner with whom to brand. Although Robertson later offered to brand Spe–Dee Mart through Conoco in January, 1985, the Greenwoods declined Robertson's offer.

After the October meeting John Johnson, according to Stanley Greenwood, solicited the Spe–Dee Mart business. Greenwood, however, declined the offer and informed him that they would continue business with Robertson. Hoyet Greenwood testified that a Phillips representative later contacted him and offered to brand the Spe–Dee Mart outlets, but that Spe–Dee Mart had already reached a branding agreement with Unocal. Following Spe–Dee Mart's brand-ing with Unocal, Robertson lost all present and expected Spe–Dee Mart business, which had accounted for approximately sixty-five percent of his revenues.

These several conversations between Robertson and Phillips employees led Robertson to file a multi-count claim against Phillips, alleging breach of an express oral and written contract, breach of the duty of good faith and fair dealing, tortious interference with a business relationship or expectancy, breach of fiduciary duty, actual fraud, constructive fraud, negligent misrepresentation, conspiracy, prima facie tort and negligence. At the close of Robertson's case, the district court granted Phillips' motions for directed verdict on the theories of breach of written contract, breach of fiduciary duty, negligent misrepresentation, prima facie tort and conspiracy. At the close of all the evidence, the district court denied Phillips' motions for directed verdicts on each of the remaining theories, including Robertson's prayer for punitive damages.

The district court then submitted the case to the jury. In answers to special interrogatories, the jury could not agree on whether Phillips had made an oral promise to Robertson, and the district court declared a mistrial on that issue. The jury found Phillips liable for fraud, breach of the duty of good faith and fair dealing, tortious interference and negligence. It determined that Phillips was seventy percent responsible and Robertson Oil thirty percent responsible for the occurrence and any damages resulting from it, and returned a verdict of $750,000 in compensatory damages and $5,000,000 in punitive damages against Phillips. Final judgment was entered against Phillips in accordance with the compensatory and punitive damages awards of the jury.

Phillips then moved for a directed verdict on the oral contract theory on which the district court had declared a mistrial, and motions for judgment notwithstanding the verdict or for a new trial on the issues of fraud, tortious interference, breach of the duty of good faith and fair dealing and negligence. The district court granted

judgment notwithstanding the verdict in Phillips' favor on the breach of the duty of good faith and fair dealing theory, but rejected Phillips' request for relief on the remaining counts. Phillips now appeals each adverse decision of the district court.

## II.

Phillips first argues that the district court erred in denying its motion for judgment notwithstanding the verdict on the fraud theory. We have had frequent occasions to state our standard of review of the submissibility of a case. We may find for Phillips only if:

"all of the evidence points one way and is susceptible of no reasonable inferences sustaining the position" of [Robertson]. Furthermore, we must resolve direct factual conflicts in favor of [Robertson], assume as true all facts in [its] favor which the evidence tends to prove, and give [it] the benefit of all reasonable inferences. We may not find for [Phillips] if the evidence so viewed would "allow reasonable jurors to differ as to the conclusions that could be drawn."

*Craft v. Metromedia, Inc.*, 766 F.2d 1205, 1218 (8th Cir.1985) (citations omitted); *cf. Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir.1988). Where there is substantial evidence to support the jury's verdict, we must uphold that verdict. *Washburn v. Kansas City Life Ins. Co.*, 831 F.2d 1404, 1411 (8th Cir.1987).

Phillips alleges that at trial Robertson failed to establish the existence of an intentional misrepresentation of fact by Phillips and justifiable reliance upon such a misrepresentation by Robertson. These are essential elements of fraud under Arkansas law. *See Merrill Lynch v. First Nat'l Bank of Little Rock*, 774 F.2d 909, 913 (8th Cir.1985).

Robertson's claim of fraud is premised upon conversations he had with Lewis concerning the branding of Spe–Dee Mart. According to Robertson, Lewis told him in May that Phillips would brand all of the Spe–Dee Mart outlets and continued throughout the summer to assure him in telephone conversations and at a golf game that they would brand. Finally, at an October meeting, Lewis informed Robertson for the first time that Phillips would not brand Spe–Dee Mart.

The evidence in this case, however, is hotly disputed. While Lewis has almost no memory of any of the conversations, Howard testified that he informed Robertson there could not be an agreement to brand all twenty-one of the outlets, especially those close to other outlets branded by Phillips. Likens testified that he was opposed to the branding request at the outset because of difficulties he had with Robertson over both branding violations and overages and underages in orders. In evaluating the submissibility of Robertson's claim, we cannot pass upon issues of credibility, nor do we accept Phillips' argument that certain uncontradicted portions of testimony of its witnesses must be given conclusive weight.

Phillips first attacks the jury's finding that Phillips intentionally misrepresented a material fact to Robertson, focusing on Lewis' initial statement that "[t]here will be no problem with it. If they meet our image standards, we'll do it." Phillips contends that this expressed no more than an optimistic response to Robertson's branding proposal and his sincere opinion that Phillips would brand the Spe–Dee Mart stores in the future. Relying on *Anthony v. First Nat'l Bank*, 244 Ark. 1015, 1024, 431 S.W.2d 267, 272 (1968), Phillips maintains that Lewis' statements were promises and concerned events to occur in the future, and that they therefore do not support an action for fraud.

The rule in *Anthony*, however, does not apply if one makes a promise knowing at the time that it will not be kept, and injury results to the person relying on the promise. *See Victor Broadcasting Co. v. Mahurin*, 236 Ark. 196, 202, 365 S.W.2d 265, 269 (1963). Thus, to establish a submissible case of fraud, it is critical that Robertson establish not only a misrepresentation, but also Phillips' knowledge that the promise would not be kept.

We entertain some questions as to whether the initial statement made by Lewis, that there "would be no problem" obtaining branding, constitutes fraud, since it was qualified by the reference to Spe–Dee Mart meeting Phillips' image standards. Further, Lewis's statements indicating that he would approve the branding deal when it got to him presupposes additional activity on the part of others before he could perform the promise. Additionally, Lewis's statement at trial that he "had no intentions either way in 1984" to brand or not brand leaves the question somewhat indefinite.

When we consider, however, the later telephone conversations throughout June, July, and August during which Lewis assured Robertson that he should not worry about branding as "it's taken care of" and "it's no problem," the jury could conclude that Lewis's assurances were not simply optimistic opinions, but instead statements of fact. When Lewis made these assurances, there was evidence from which a jury could infer that Likens and Howard had discussed their reservations on the Robertson branding deal. Likens testified that he was opposed to Robertson's branding proposal from the beginning because of earlier problems with Robertson concerning branding violations. Similarly, Howard testified that Phillips decided not to brand all the Spe–Dee Mart Stores in May or June, and that he drafted a letter to Robertson expressing Phillips' reservations on the branding deal but never sent it. From this evidence we are satisfied that the jury could find that a promise had been made by Phillips and that it knew at the time it was made that the promise would not be kept.

Phillips also contends that Robertson presented insufficient evidence of its justifiable reliance on Phillips' representations. Phillips maintains that Robertson knew there was a possibility that he would not receive branding for Spe–Dee Mart, because he did not inform Spe–Dee Mart that their request to brand with Phillips had been or would be granted. The district court, however, determined that Robertson made a submissible showing of reliance. Robertson did not seek another supplier to brand Spe–Dee Mart during the entire negotiation period with Phillips from May until October. Additionally, Robertson, believing Phillips was ready to close the branding agreement, set up the October meeting, at which he was embarrassed and discredited in front of his client. Consequently, Robertson lost the Spe–Dee Mart account. We conclude that the record supports the jury's finding that Robertson justifiably relied on Phillips representations, and that Phillips was therefore liable for fraud.

### III.

■ Phillips next contends that the evidence was insufficient to support a jury verdict that Phillips tortiously interfered with the business relationship of Robertson and Spe–Dee Mart. We have identified the elements of this tort under Arkansas law as follows:

(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted.

*McGee v. Hester,* 724 F.2d 89, 92 (8th Cir. 1983). Phillips challenges only one of these four elements, denying that it intentionally interfered with the business relationship between Spe–Dee Mart and Robertson. We conclude that there was sufficient evidence in the record to support the jury's finding.

The testimony of Stanley Greenwood, co-owner of Spe–Dee Mart, reveals that before the October meeting Spe–Dee Mart had prepared its stores for evaluation by Phillips and expected to be branded by Phillips, with Robertson acting as their jobber. At the October meeting Phillips informed Spe–Dee Mart for the first time that only three of their stores would be branded. At this time, Phillips knew that the contract between Spe–Dee Mart and Robertson depended on the branding of all

the Spe–Dee Mart stores. Likens testified that at this meeting Lewis questioned Robertson's ability to perform the contract and then informed the Greenwoods that "if there had been improvements in Butch's performance, and if Greenwood performed then they would consider [branding] others at a later date." These statements caused the Greenwoods to lose confidence in Robertson's abilities on the belief that Phillips "had a problem" with Robertson and that Robertson must be "financially insolvent." The Greenwoods refused to deal with Robertson when they found another supplier, Unocal, with whom they could brand. We conclude that these facts alone are sufficient evidence to support the jury finding of intentional tortious interference by Phillips.[1]

### IV.

■ Phillips also argues that the jury's finding of negligence must be reversed because Phillips owed no duty to Robertson as a matter of law. Robertson described the alleged duty as one to timely notify Robertson of Phillips' decision not to brand all of the Spe–Dee Mart stores. The district court followed this reasoning in denying Phillips' motion for judgment notwithstanding the verdict on the negligence theory.[2]

Phillips contends that under Arkansas law, silence and inaction by an offeree in a contract implies a rejection of the offer after a reasonable lapse of time. *See Reliance Bagging Co. v. Electric Gin Co.,* 208 Ark. 829, 832, 187 S.W.2d 724, 726 (1945). Because Phillips offered no definite answer to Robertson's proposal to brand Spe–Dee Mart, Phillips maintains that this constituted rejection and it had no duty to notify. According to Arkansas law, however, a defendant becomes subject to a duty to act carefully if he gratuitously undertakes an act. *See Haralson v. Jones Truck Line,* 223 Ark. 813, 816–87, 270 S.W. 2d 892, 895 (1954); *Mandel v. United States,* 793 F.2d 964, 968 (8th Cir.1986), (applying Arkansas law). The evidence reveals that Phillips affirmatively acted by repeatedly assuring Robertson that they would brand from May to October. Thus, while Phillips had no duty to brand, Robertson has made a sufficient showing that Phillips was under a duty to inform Robertson that it would not brand. We affirm the ruling of the district court that there was a submissible issue of negligence.

### V.

■ Phillips next argues that the jury's findings of both fraud and negligence are inconsistent and that a new trial is required. Although we have determined that Robertson has made submissible cases of fraud and negligence, we believe that such findings are inconsistent with each other. Special answers or findings by the jury must be consistent with each other, and if they are irreconcilably inconsistent, they destroy each other. *McIntyre v. Everest & Jennings, Inc.,* 575 F.2d 155, 157 (8th Cir.), *cert. denied,* 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978). Although it is the duty of the courts to make every reasonable effort to harmonize the answers, we cannot do so here. *Cf. Gallick v. Baltimore & Ohio R.R. Co.,* 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963).

> Plaintiff contended that Phillips unreasonably delayed in conveying its intention not to brand Spe–Dee Mart and let plaintiff believe for too long that its request held a good probability of being met. It was within the power of the jury to consider the evidence of the parties' dealings and the practices of their respective businesses and to determine that Phillips was negligent in its handling of the subject negotiations and transactions with the plaintiff.

1. Phillips also contends that there is insufficient evidence for the jury to find that Robertson's damages were proximately caused by Phillips. We conclude from a careful review of the evidence that a jury could find that Phillips' actions in its negotiations for the branding of Spe–Dee Mart caused Robertson to lose the Spe–Dee Mart account, and that Spe–Dee Mart's agreement to brand with Unocal was concluded at a later time. The extent of damages was for jury determination.

2. The district court, in ruling that there was a submissible issue of negligence, stated:

Under Arkansas law, fraud is an intentional tort which requires "knowledge or belief" that the representation is false with "an intention to induce" the plaintiff to act on reliance. *See Merrill Lynch v. First Nat'l Bank of Little Rock*, 774 F.2d 909, 913 (8th Cir.1985) (citing Arkansas law).

In this case, the jury returned an affirmative answer to special interrogatory 2, which stated:

> Do you find by a preponderance of the evidence that Phillips Petroleum Co. made a false representation of a material fact, that Phillips Petroleum had knowledge or believed that the representation of fact was false, or else recklessly and without regard to its truth or falsity asserted it as being true; that Phillips intended to induce Robertson Oils reliance on the misrepresentation that Robertson Oil justifiably relied on the misrepresentation; and that Robertson Oil suffered damages?

Thus, the jury could find Phillips liable for fraud only if it falsely represented to Robertson that it would brand all of the Spe–Dee Mart Stores, intending to induce it to rely on the misrepresentations, when it had already determined that it would not brand the stores.

Negligence, by contrast, is not an intentional tort, *see Seaman Store Co. v. Bonner*, 195 Ark. 563, 569, 113 S.W.2d 1106, 1109 (1938), and is defined as the failure to exercise the ordinary care which a reasonably careful person would use under similar circumstances. *See Dongary Holstein Leasing, Inc. v. Covington*, 293 Ark. 112, 117, 732 S.W.2d 465, 468 (1987). Thus, the

theories underlying fraud and negligence are antithetical. An act or failure to act cannot be both intentional and unintentional. We should not stop at this point, however, as we must examine the specific elements of fraud and negligence at issue in this case. We have some difficulty in analyzing the inconsistency here, as the negligence instruction was general and there was no instruction setting out the elements of the negligence claim. Accordingly, the jury did not make specific factual findings as to the acts or omissions constituting Phillips' negligence.[3] We must look to the reasoning of the district court and the position of the parties to ascertain the basis for the negligence claim. As we previously observed in Part V, the essence of the negligence claim is that Phillips unreasonably delayed in conveying its intention not to brand Spe–Dee Mart and let Robertson believe for too long that "its request held a good probability of being met."

A finding of fraud required findings that Phillips falsely represented to Robertson that it would brand all of the Spe–Dee Marts, knowing at the time that it could not honor its promise, and that Phillips intended to induce Robertson to rely on the representation. A finding of negligence, on the other hand, required that Phillips did no more than fail to exercise ordinary care in informing Robertson of its decision not to brand. This difference between the intentional tort of fraud and the inadvertent action of negligence thus points to a necessary inconsistency between the factual findings in this case.[4] Thus, the jury could find one or the other proposition, but

---

**3.** The negligence interrogatory No. 5A read as follows: "Do you find from a preponderance of the evidence that Phillips Petroleum Co. was negligent and that that negligence was a proximate cause of injury to Robertson Oil Company?" The district court's instruction concerning negligence further stated:

> When I use the word "negligence" in these instructions, I mean the failure to do something that a reasonably careful person would do, or the doing of something that a reasonably careful person would not do, under circumstances similar to those shown by the evidence in this case. To constitute negligence, an act must be one from which a reasonably careful person would foresee such

as appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner.

**4.** This inconsistency between a negligent representation and a fraudulent representation is recognized in the *Restatement (Second) of Torts* § 528 (1977), which states: "A representation that is believed to state the truth but which because of negligent expression states what is false is a negligent but not a fraudulent misrepresentation." Arkansas courts have relied upon the Restatement in the tort field. *See Pinkston v. Lovell*, 296 Ark. 543, 548–50, 759 S.W.2d 20, 22–23 (1988); *Kelley v. Wiggins*, 291 Ark. 280, 293, 724 S.W.2d 443, 450 (1987).

not both. The jury was not instructed, however, that it could return a verdict on only one of the two inconsistent theories.

We are therefore satisfied that we must reverse both the negligence and fraud verdicts and remand the issues for a new trial. At that time, the jury should be instructed that a finding of negligence will stand only on findings that are not inconsistent with those findings required for fraud. *See Jim Halsey Co. v. Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985). The tension between the two theories may require a further articulation of the elements of negligence. We leave this issue to the district court on retrial.[5]

## VI.

Finally, Phillips appeals both the compensatory and punitive damage awards. Because there was a general verdict, it is not possible to segregate the various theories to determine which among them supported the jury's award of punitive and compensatory damages. While we have affirmed the theory of *tortious interference with a business relationship*, three other theories of liability no longer stand. Any or all of these theories of liability, the duty of fair dealing and good faith set aside by the district court, and the fraud and negligence findings which we have held to be inconsistent, may have provided the basis for the jury's damage award.

For reversal, Phillips relies on *Dudley v. Dittmer*, 795 F.2d 669, 673 (8th Cir.1986), where we held "that when one of two theories has erroneously been submitted to the jury a general verdict cannot stand." *See also Bone v. Refco, Inc.*, 774 F.2d 235, 242 (8th Cir.1985). In *Dittmer* two theories of

liability, fraud and market manipulation, were submitted to the jury. One theory, fraud, was found to be erroneously submitted to the jury. Because the jury in *Dittmer* returned a general verdict, the court was unable to determine the extent to which the verdict rested on the improperly submitted fraud theory, or whether the jury would have granted the same award had the case been submitted on the proper theory alone. Thus, the court concluded the general verdict could not stand.

■ In analyzing the punitive damage award, we conclude that the rule in *Dittmer* is applicable here. Punitive damages are not intended to compensate an injured party, but to punish and deter conduct of the offending party. *Holmes v. Hollingsworth*, 234 Ark. 347, 350, 352 S.W.2d 96, 98 (1961). The instruction given to the jury on punitive damages required them to find that Phillips "intentionally pursued a course of conduct for the purpose of causing harm."[6] The Arkansas Supreme Court in discussing the elements of punitive damages has stated:

"In assessing exemplary damages the nature, extent, and enormity of the wrong, the intent of the party committing it, and, generally, all the circumstances attending the particular transaction involved, including any mitigating circumstances which may operate to reduce without wholly defeating such damages, may be taken into consideration, and so, as a rule, may the financial and social condition and standing of the party."

*Holmes*, 234 Ark. at 352, 352 S.W.2d at 99 (quoting 15 Am.Jur. *Damages* § 298 (1938)). In *Ray Dodge, Inc. v. Moore*, the court further held:

---

5. Phillips also contends that the jury's inability to find that a promise was made in interrogatory no. 1 (the contract and promissory estoppel issues) is inconsistent with the finding that a fraudulent representation was made in interrogatory no. 2 (the fraud issue). There is, however, no inconsistency as a jury's failure to reach a verdict on one interrogatory does not prevent a court from accepting other properly answered interrogatories. *See Bridges v. Chemrex Specialty Coatings, Inc.*, 704 F.2d 175, 180 (5th Cir. 1983). *See also Skyway Aviation Corp. v. Min-*

*neapolis Northfield & So. Ry. Co.*, 326 F.2d 701, 704 (8th Cir.1964) (failure to agree on unanswered interrogatories does not vitiate otherwise unanimous verdict effectively disposing of the issues submitted).

6. This language is based upon the standard for malice established by the Arkansas Supreme Court in *Chicago, Rock Island & Pacific Ry. Co. v. Whitten*, 90 Ark. 462, 468, 119 S.W. 835, 837 (1909).

"The amount of actual damages sustained by a plaintiff is one indication of the culpability of the defendant's acts, but it cannot be the sole criterion for the assessment of punitive damages. Also relevant is the prospective deterrent effect of such an award upon persons situated similarly to the defendant, the motives actuating the defendant's conduct, the degree of calculation involved in the defendant's conduct, and the extent of the defendant's disregard of the rights of others."

251 Ark. 1036, 1045, 479 S.W.2d 518, 523–24 (1972) (quoting *Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 453 P.2d 551 (1969)).

The conduct of Phillips relevant to an award of punitive damages necessarily differs according to the various theories of liability on which the jury based its verdict. Because the punitive damage issue was submitted in the form of a general verdict, however, we cannot ascertain what conduct of Phillips was determined by the jury to merit punitive damages. Some or all of the punitive damage award may have rested upon theories improperly submitted to the jury. Thus, under *Dittmer*, we have no alternative but to reverse the punitive damage award and remand the issue to the district court. Upon retrial, the jury should be instructed that a finding of negligence alone is not enough to support an award of punitive damages as it requires intentional action by Phillips.[7]

The district court correctly analyzed that all of the liability theories rested upon only one basis for actual damages, the loss of the Spe–Dee Mart account. As the district court succinctly stated concerning actual damages: "All roads lead to Rome." We have no quarrel with this analysis. Although the district court set aside the good faith and fair dealing theory, and although we have held the negligence and fraud theories to be inconsistent, the tortious interference theory was submitted to the jury without error and supports the actual damage award. In *Dittmer*, each theory submitted to the jury caused the plaintiff separate and distinct injuries. Consequently, the court was unable to determine the extent to which the verdict rested on an improperly submitted theory. Here, however, the same injury sustained all theories and we are satisfied that *Dittmer* does not bar the actual damage award.

We are troubled, however, with the interplay between the considerations involved in compensatory and punitive damages. As we have explained above, the conduct of a defendant determines the amount of punitive damages. The tortious interference with a business relationship, fraud, and good faith and fair dealing theories, all intentional torts which support the punitive damage award, each involve different conduct. Each of these theories therefore would support a different amount of punitive damages, depending upon the conduct involved. Further, the Supreme Court of Arkansas has stated that the amount of actual damages sustained by a plaintiff is one indication of the "culpability of the defendant," although not the sole criterion in assessing punitive damages. *Ray Dodge*, 251 Ark. at 1045, 479 S.W.2d at 524. Because retrial of the punitive damage award will necessarily involve full development of Phillips' conduct, and because actual damages contribute to the determination of punitive damages and are a required foundation for such damages, *see Bell v. McManus*, 294 Ark. 275, 277, 742 S.W.2d 559, 560 (1988), we have carefully considered whether the best course is simply to require a retrial of all damages issues. We conclude, however, that as the award of actual damages is fully supported by the tortious interference with contract verdict, it should stand. The district court may by proper instructions inform the jury as to the relationship between actual damages and punitive damage considerations.[8]

---

7. Phillips also maintains that the punitive damage award should be reversed because it violated its due process rights, and it was excessive under the Eighth Amendment. Because we remand the punitive damage issue to the district court for a new trial, we need not consider these arguments.

8. Because we affirm the award of actual damages, we need not consider Phillips' argument that it was entitled to a directed verdict on

## VII.

In sum, we affirm the district court's determination that Robertson made a submissible case on the fraud, tortious interference, and negligence claims, and uphold the district court's denial of a directed verdict on the oral contract theory. Because of inconsistencies in the jury's fraud and negligence findings, however, we must remand those issues for a new trial. Because we are unable to determine the basis for the jury's punitive damage award, which was submitted to the jury in the form of a general verdict, retrial of that issue is necessary as well. As the tortious interference verdict supports the actual damage award and is not barred by *Dittmer*, we affirm the actual damage award.

Robertson's oral contract theory, as this theory can only support the award of actual damages.