HICKLIN ENGINEERING,
L.C., Plaintiff,

v.

R.J. BARTELL, Defendant.

No. 4–00–CV–90398.

United States District Court,
S.D. Iowa,
Central Division.

Oct. 18, 2000.

Edmund J. Sease, Jerrrey D. Harty, Des Moines, IA, for Plaintiff.

Andrew J. Bracken, Des Moines, IA, for Defendant.

## ORDER

PRATT, District Judge.

The Court has before it Defendant's Motion to Dismiss filed August 28, 2000. Defendant R.J. Bartell ("Bartell") seeks dismissal of this diversity action for lack of personal jurisdiction or lack of venue under 28 U.S.C. § 1391. In the alternative, Bartell urges transfer of this case to the United States District Court for the Eastern District of Wisconsin. In its resistance filed September 21, 2000, Plaintiff Hicklin Engineering, L.C. ("Hicklin") asserts that personal jurisdiction exists and that venue requirements are met. The Defendant replied October 2, 2000. The Court held oral argument on the motion on October 5, 2000. The matter is fully submitted.

### I. Facts

The underlying facts in this case are not in dispute. Hicklin, an Iowa corporation, makes and sells transmission testing and rebuilding equipment for motor vehicles. In June of 1998, Hicklin acquired Axiline Precision Products ("Axiline") of Green Bay, Wisconsin. Axiline makes and sells equipment used in the automobile transmission testing and repair industry. Hicklin operates Axiline as a division of the Hicklin Corporation. According to Hicklin's president Scott Giles, Axiline exists in name only and is treated as part of Hicklin.

Bartell is an engineer who lives and works in Green Bay, Wisconsin. Beginning in 1993, Bartell performed various engineering and drafting services for Axiline. After Hicklin's purchase of Axiline,

Bartell continued to provide drafting and engineering services for Axiline and its Iowa parent until Bartell terminated the business relationship in February of 2000. The record shows that during this roughly two-year period between June 1998 and February 2000 Bartell and Hicklin corresponded regularly between Wisconsin and Iowa regarding technical matters and project updates.[1] Hicklin paid Bartell approximately $150,000 during this time period for Bartell's engineering work done on Hicklin's behalf. *See* Decl. of Scott Giles at para. 13.

Bartell performed his engineering work for Hicklin and Axiline almost exclusively from his office in Green Bay, Wisconsin. Moreover, Bartell does not own property in Iowa, nor does he have an office, sales agent, phone line, or bank account in Iowa. Bartell claims not to advertise or directly solicit business from customers in Iowa. But for Hicklin's purchase of Axiline in 1998, Bartell probably would not have crossed paths with an Iowa transmission testing company such as Hicklin.

One visit to Iowa is noted. In July of 1999, Bartell made a two-day business trip to Des Moines to visit Hicklin's main office and manufacturing facility. Bartell toured the Des Moines facility to become familiar with Hicklin's equipment and its overall operation there. While at the Des Moines office, Bartell gave a Hicklin engineer at least two computer zip-discs, one of which included CAD[2] drawings. Bartell also gave a presentation to Hicklin's engineers on CE certification.[3] Hicklin paid Bartell $1,440 for his trip to Des Moines.

Hicklin maintains that "[d]uring the several years in which Defendant provided drafting services to Plaintiff, Defendant was the recipient of proprietary, confidential and trade secret information and mate-

---

1. For example, the Court counts at least 12 communications (mostly faxes) which show that Bartell kept the Hicklin engineers updated on Hicklin's projects in Minnesota and New Jersey. Additionally, Bartell would seek Hicklin's input regarding technical specifications for these projects. *See* Declarations

from Larry Kruse and Randy Nation and accompanying exhibits.

2. CAD stands for "computer-aided design."

3. The record does not reveal what "CE certification" means.

rials of Plaintiff." Compl. at para. 10. Hicklin further contends that "a relationship of confidence" existed between Plaintiff and Defendant, "imposing an obligation of confidence on Defendant to keep confidential information disclosed by Plaintiff." Compl. at para. 11. One confidential idea regarded a "torque converter dynamometer"[4] which Hicklin's president allegedly shared with Bartell in confidence at a meeting in Green Bay, Wisconsin in mid-February of 2000. Bartell's knowledge of this idea and his subsequent wrongful use of it are at the heart of the instant law suit.

On February 29, 2000, Bartell terminated his relationship with Axiline and Hicklin. Hicklin alleges that in April of 2000, Bartell disclosed the idea for this torque converter dynamometer to a long-time Hicklin customer based in Texas. Hicklin further alleges that Bartell is currently marketing on the Internet "transmission dynamometer models of all styles of transmissions" and is thereby unlawfully profiting from confidential and proprietary information gained during the course of their business relationship.

On July 28, 2000, Hicklin filed the instant lawsuit in six counts: (1) breach of contract; (2) misappropriation of trade secrets in violation of Iowa Code § 550; (3) common law misappropriation; (4) conversion; (5) replevin; and (6) action to quiet title to personal property. Defendant's motion to dismiss based on personal jurisdiction and venue, and his motion to transfer followed.

In general, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, as in this case, it should pass on the jurisdictional issues first in advance of venue considerations. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (1990) (note 15 omitted). However, "when there is a sound prudential justification for doing so," a court may take up the question of venue before personal jurisdiction. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). In this case, resolving what appears to be a straightforward venue issue makes it unnecessary to decide the more difficult personal jurisdiction issue. Thus, in the interest of judicial economy, the Court will only deal with the venue aspect of Defendant's motion to dismiss.

## II. Venue

The parties agree that the federal venue statute, 28 U.S.C. § 1391, controls the venue outcome in this case. At issue is § 1391(a)(2) which provides:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]

Where, as here, there are multiple claims involved, unless the doctrine of "pendent venue" applies,[5] venue must be proper as to each claim. *See Bredberg v. Long*, 778 F.2d 1285, 1288 (8th Cir.1985); 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3808 (1986). Since no pendent venue

---

**4.** This "torque converter dynamometer" is not explained in the briefs, though it appears to be a key piece of equipment in the transmission and engine repair industry.

**5.** In a lawsuit with multiple claims, if there is one claim for which venue is proper and the other claims are so closely related in terms of common facts, then under the doctrine of "pendent venue," the court may, in its discretion, exercise venue over those claims that

otherwise lack venue. *See* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3808 (1986) (collecting cases); *see also Travis v. Anthes Imperial Ltd.*, 473 F.2d 515, 528 (8th Cir.1973) (applying "pendent venue" to a common law claim). Because the Court fails to find a single claim for which venue is proper, pendent venue principles are not implicated.

exists in this case, the Court must analyze venue for each claim.

Rather than analyzing venue separately for each claim, the parties have advanced more generalized venue arguments. Defendant Bartell argues that venue is improper in this district because "[a]ll of the matters complained of against Mr. Bartell arose from his activities in Wisconsin." Def.'s Memo. in Supp. of Mot. to Dismiss Under Rule 12(b) at 8. Accordingly, Bartell asserts that venue is not proper in this district. He therefore urges dismissal or transfer of the case to the Eastern District of Wisconsin where he concedes venue would be proper.

Hicklin argues that a substantial part of the events or omissions giving rise to its claims occurred in Iowa. As explained in its brief, "Hicklin's claims are the result of an ongoing business relationship that Defendant formed with Hicklin in Iowa. Bartell continued providing services for an Iowa company under an imposed duty of confidentiality—and Bartell breached that duty." Pl.'s Memo. in Opp'n to Def.'s Mot. to Dismiss Under Rule 12(b) at 10. As will be made clear, Hicklin's argument that the instant claims arose from Bartell's breach of a duty of confidentiality forged from an "ongoing business relationship" falls short of the mark required by 28 U.S.C. § 1391.

*1. Breach of contract*

Count I of Plaintiff's Complaint alleges that an "implied agreement exists between Plaintiff and Defendant, obligating Defendant to keep confidential information disclosed by Plaintiff, not to disclose such information to any third party, and not to use such information except in furtherance of a business relationship with Plaintiff." Compl. at 3 para. 13. Plaintiff Hicklin further alleges that "[o]n or about February 24, 2000, Plaintiff disclosed to Defendant in confidence an invention relating to a torque converter dynamometer."

Compl. at 3 para. 14. Count I goes on to allege that soon after Defendant Bartell terminated his business relationship with Hicklin, Bartell revealed to Hicklin's competitors, without Plaintiff's permission, a "concept drawing for a torque converter dynamometer." Compl. at 3 para. 16. It is alleged that Hicklin's unauthorized sharing of this confidential trade secret constituted a breach of the parties implied agreement. According to Hicklin's president, Bartell stands to profit from this breach through the sale of these dynamometers on the Internet.[6]

Venue is lacking as to the breach of contract claim because the acts giving rise to this claim did not occur in this district, but in Wisconsin. The court assumes, as it must, that an implied confidentiality/nondisclosure agreement existed between Hicklin and Bartell. By Hicklin's own admission, however, this agreement was formed in Wisconsin. *See* Decl. of Scott Giles (explaining how in mid-February 2000, Hicklin president Scott Giles met Bartell in Green Bay, Wisconsin and "told Bartell in confidence about a new idea Hicklin had for a torque converter dynamometer"). Moreover, it appears from the record that Bartell breached this agreement in Wisconsin when he disclosed the idea for the dynamometer to a Hicklin customer. *See* Decl. of Scott Giles at 3 para. 10 and Ex. B attached thereto. For purposes of this motion, the Court assumes that Bartell is profiting from the sale of torque converter dynamometers and that Hicklin will be damaged financially in Iowa. However, economic damage experienced by the plaintiff in the forum state, without additional contact inside the forum, is not enough to satisfy federal venue requirements. *See DaimlerChrysler Corp. v. Askinazi*, 2000 WL 822449, No. Civ. A. 99–5581, at *6 (E.D. Pa. June 26, 2000) ("[V]enue is not proper in a district if injury is the only event occurring in that district.") (citation omitted); *Penn-*

---

**6.** As of September 19, 2000, Bartell's website, *www.bartellperformance.com*, advertised "transmission dynamometer models for all styles of transmissions that are available today." Decl. of Scott Giles at 3 para. 12.

*sylvania Gear Corp. v. Fulton,* 1999 WL 80260, No. Civ. A. 98–1538, at *3 (E.D.Pa. Jan. 26, 1999)(even though economic impact of wrongful conduct felt inside the forum, the events giving rise to the claims occurred outside of it); *Triple Crown America, Inc. v. Biosynth AG,* 1997 WL 611621, No. Civ. A. 96–7476, at *4 (E.D.Pa. Sept. 17, 1997) ("An act committed outside this district resulting in a loss of revenue to a party in the district is not itself an event in the district giving rise to a claim.") (citation omitted); *cf. Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995)(in federal trademark infringement action, "while damages or potential adverse economic effect are a necessary part of a Lanham Act claim, if Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly"). It is clear from the record that almost none of the "events or omissions giving rise to the [breach of contract] claim," let alone a "substantial part" of the events or omissions, occurred in this district. Thus, venue as to the breach of contract claim is lacking. *See Insight Data Corp. v. First Bank Sys., Inc.,* 1998 WL 146689, No. 97 CIV.4896 (MBM), at *3 (S.D.N.Y. March 25, 1998) (action for breach of non-disclosure and non-competition agreement; venue not proper in Southern District of New York because none of the events or omissions giving rise to the breach of contract claim occurred in New York, but in Minnesota where defendant worked).

### 2. Misappropriation of trade secrets

■ Count II of the Complaint alleges that Hicklin's "invention of a torque converter dynamometer has been treated by Plaintiff as trade secret information" within the meaning of Iowa's Uniform Trade Secrets Act. *See* Iowa Code § 550 *et seq.* Hicklin further alleges that Bartell "has breached a trust relationship between Plaintiff and Defendant, and as a result of that breach of trust relationship, has wrongfully appropriated Plaintiff's trade secrets," and has caused financial damage within the meaning of Iowa Code § 550.

Under Iowa Code § 550, an owner can sue for damages or an injunction based on the misappropriation of its trade secret. Among other definitions given in the statute, misappropriation means "[d]isclosure of a trade secret by a person who uses improper means to acquire the trade secret." Iowa Code § 550.2(3)(b). "Improper means" includes "breach ... of a duty to maintain secrecy." Iowa Code § 550.2(1). The trade secret at issue is the invention relating to the torque converter dynamometer.

It is plain to the Court that a "substantial part of the events or omissions giving rise to [this] claim" did not occur in this district, but rather in Wisconsin. "[A] claim for misappropriation arises when the defendant makes commercial use of the trade secret." 3 Roger M. Milgrim, *Milgrim on Trade Secrets* § 13.04 at 13–78—13–79 (2000). "[W]here the gist of the tort is disclosure of a trade secret in violation of an obligation of confidentiality, the claim likely arises at the time of disclosure." *Id.* at 13–79. In this case, and assuming the truth of the allegations, the record makes clear that the events giving rise to this claim occurred in Wisconsin. It was there that Bartell both unlawfully "disclos[ed]" the trade secret to a third party and made or will "make[ ] commercial use" of it.

Granted, Bartell did have contacts with Iowa regarding matters not related to the torque converter dynamometer. There was interstate correspondence between the parties, and at one point in July of 1999, Bartell paid a two-day visit to Des Moines to tour Hicklin's main office and manufacturing facility. In a causal sense, it might be argued that these contacts contributed to the parties' overall trusting business relationship out of which eventually arose the instant trade secret controversy. It is the Court's opinion that these activities have an insubstantial connection with the kinds of events that give rise to this claim. *See Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995) (in a Lanham Act context, the Court noted: "It is true that manufacturing the trailers was a necessary event, in a

causal sense, to an attempt to pass them off, but we do not think that is an event giving rise to Mr. Woodke's claim because it was not itself wrongful.").

Such interstate activity is certainly germane in a personal jurisdiction/minimum contacts analysis, *see, e.g., Dudley v. Dittmer*, 795 F.2d 669 (8th cir.1986) [7], but not in a venue analysis where the focus is on the substantiality and location of these contacts. The Third Circuit expressed the relationship well: "[The] substantiality [requirement] is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.... The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the *location* of those 'events or omissions giving rise to the claim.'" *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294–95 (3d Cir.1994) (emphasis added). In this case, beyond the economic injury it may sustain in Iowa, Hicklin has not identified any event, much less a substantial event, which happened in Iowa which gave rise to its misappropriation of trade secrets claim. *See Pennsylvania Gear Corp. v. Fulton*, 1999 WL 80260, No. Civ. A. 98–1538, at *3 (E.D.Pa. Jan. 26, 1999) (action between plaintiff gear manufacturer and defendant sales broker for, among other things, tortious interference with business relations; even though gears were manufactured inside the forum and financial impact of defendant's interferences would be felt there, venue found not proper there because de-

fendant's improper acts and communications all took place outside the forum). Thus, venue as to the statutory trade secrets claim is misplaced.

### 3. Misappropriation

Count III of the Complaint is a common law claim for misappropriation. Hicklin alleges that Bartell appropriated the idea for a torque converter dynamometer as well as numerous drawings relating to Hicklin's transmission testing and rebuilding equipment.[8] The common law elements of trade secret misappropriation are similar to the statutory requirements. *See Basic Chemicals, Inc. v. Benson*, 251 N.W.2d 220, 226 (Iowa 1977) (setting forth the common law elements in a trade secrets claim: (1) existence of a trade secret, (2) acquisition of the secret as a result of a confidential relationship, and (3) unauthorized use of the secret) (citations omitted).[9]

Given the similarity, therefore, between this common law claim and its statutory counterpart, the result is the same. The events or omissions giving rise to this common law claim, as with the statutory claim, did not occur in Iowa but in Wisconsin. Venue in this district under 28 U.S.C. § 1391(b)(2) is therefore improper.

### 4. The property claims (conversion, replevin, and action to quiet title to personal property)

■ The remaining counts—counts IV, V, and VI—are all based on Bartell's wrongful possession of property belonging to Hicklin.[10] To the extent Hicklin argues

---

7. In *Dudley*, Judge John R. Gibson cogently expressed the relevance of these contacts in a personal jurisdiction analysis:

> [A]mong the contacts held sufficient in various combinations to justify the forum state's assertion of jurisdiction over a nonresident, are the nonresident's telephone calls in the forum state, ... physical presence for business purposes in the forum state, ..., or receipt of substantial profits from commerce with its residents....

795 F.2d at 672 (internal citations omitted).

8. To the extent count III alleges misappropriation of personal property, that issue will be analyzed as an aspect of the last three proper-

ty counts—conversion, replevin, and action to quiet title to personal property.

9. The Court takes no position on whether or to what extent Iowa Code § 550 preempts Hicklin's common law cause of action based on trade secrets. *See 205 Corp. v. Brandow*, 517 N.W.2d 548, 552 (Iowa 1994) ("Chapter 550 has not preempted all tort theories involving trade secrets.").

10. "The gist of a replevin action is enforcement of the plaintiff's right to immediate possession of the property wrongfully taken or detained." *Flickinger v. Mark IV Apartments, Ass'n*, 315 N.W.2d 794, 796 (Iowa 1982) (citations omitted). Conversion is the wrongful

that venue is proper here because "a substantial part of property that is the subject of the action is situated" in Iowa, 28 U.S.C. § 1391(b)—namely computer drawings, customer lists, bills of materials and customer correspondence [11]—the Court rejects such a contention. What ever remaining work product Hicklin seeks from Bartell is presumably in his possession in Wisconsin, not Iowa. If there are materials in Iowa, Bartell does not have them, and Hicklin is not suing over them. Thus, under the "substantial part of the property" clause of § 1391, venue in this district clearly is improper for these property-related actions.

 Having concluded that venue is improper in this district, the Court must next consider whether to dismiss the case or transfer it pursuant to 28 U.S.C. § 1406(a). *See* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3827 (1986). Section 1406(a) states that when a case is filed in the "wrong" district, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The Court finds that it is in the "interest of justice" to transfer this case to the Eastern District of Wisconsin.[12] By avoiding the need for a new filing in Wisconsin, significant money and time are saved. Also, the Defendant has conceded that venue in the Eastern District of Wisconsin is proper. Lastly, given that the Defendant lives and works in Wisconsin,

there is no doubt about the propriety of a Wisconsin court exercising jurisdiction over the Defendant's person.

### III. Conclusion

For the foregoing reasons, the Defendant's motion to dismiss is **DENIED**; the Defendant's motion to transfer this case to the Eastern District of Wisconsin is **GRANTED**.

**IT IS SO ORDERED.**

---

11. All these items except the computer drawings are identified and demanded by Hicklin under count I, the breach of contract claim. The Court will treat these items as if demanded under the property counts.

12. The authority for transferring this case under 28 U.S.C. § 1406(a) when the question of personal jurisdiction over the defendant remains in doubt comes from *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) where the Supreme Court held that § 1406(a) was "broad enough to authorize the transfer of [a] case[ ] . . . whether the court in which it was filed had personal jurisdiction over the defendants or not." *Id.* at 466.

dispossession of another's personal property such that the actor may justly be required to pay the other the full value of the property. *See Larson v. Great West Cas. Co.*, 482 N.W.2d 170, 173 (Iowa Ct.App.1992). Finally, an action to quiet title is a "proceeding to establish the plaintiff's title to land by bringing into court an adverse claimant and there compelling him either to establish his claim or be forever after estopped from asserting it." *Black's Law Dictionary* 1249 (6th ed.1990). Although uncommon, in Iowa one may also quiet title to personal property. *See Olsen v. Olsen*, 236 Iowa 313, 18 N.W.2d 602, 607 (Iowa 1945).