ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* HAGLER.

Opinion delivered October 29, 1923.

DAMAGES—PERSONAL INJURIES—REDUCTION OF AWARD.—Where a train conductor cursed and assaulted a passenger but no permanent injury was sustained by the passenger, and no loss of time or diminution of earning capacity or disfigurement of any kind, a verdict for $600 compensatory damages and $900 punitive damages is excessive, and will be reduced to $250 compensatory damages and $500 punitive damages.

Appeal from Miller Circuit Court; *George R. Haynie,* Judge; modified.

*J. R. Turney, J. N. Cook* and *Gaughan & Sifford,* for appellant.

1. In the absence of proof that there was some physical injury resulting from plaintiff's being struck by the conductor, plaintiff could not recover. 94 Ark. 489.

2. There is no evidence justifying submitting to the jury the assessment of punitive damages, and they should have been instructed that there could be no recovery of punitive damages. 156 Ark. 583.

3. In any event the verdict, both for compensatory and punitive damages, was excessive.

*T. B. Vance, B. E. Carter* and *J. M. Carter,* for appellee.

1. That there was an unprovoked, wanton and malicious attack upon the plaintiff by the conductor must be considered as settled by the verdict of the jury. 15 Ark. 403.

2. The verdict is not excessive.

SMITH, J.   Appellee alleged and offered testimony tending to show that he became a passenger on one of appellant's trains at Genoa, his destination being Texarkana; that he was accompanied by a boy eleven years old, named Thomas Pearson, who was his cousin, and by Victor Hagler, a young man eighteen years old, who was his brother; that, after he and his companions had found seats in the car, H. G. Hawk, the conductor in charge of the train, came to the place where appellee and

his companions were seated, to collect their fares. Victor Hagler paid his fare, amounting to thirty-five cents, and appellee paid seventy-five cents for himself and the boy. The price of appellee's ticket was thirty-five cents, and that of the boy was eighteen cents, the latter being a half-fare ticket. In payment of his own fare and that of the boy, appellee gave the conductor a half-dollar, two dimes and one nickel, and the conductor issued proper receipts therefor, and went into the next car. The conductor soon returned, and appellee asked for his change, and was told that the change was coming the other way, as he had only paid a quarter, two dimes and one nickel, whereas the fare was fifty-three cents. Appellee insisted there was change coming to him, whereupon the conductor became angry and cursed appellee and called him very vile and abusive names, and when appellee extended his hand for the change and asked for it, the conductor commenced striking appellee's fingers with his ticket punch, and struck him across the hand seven or eight times, breaking the skin on three fingers, thereby inflicting an injury from which he suffered about three weeks before the wounds had entirely healed. Appellee was thirty-three years old, and had been drafted into the army, where he developed epilepsy, and for the treatment of this disease he was sent to an army hospital, where he remained for about two years before his discharge therefrom, and thereafter he had no recurrence of the fits from which an epileptic suffers until about two days after the incident on the train, when he had a fit. Appellee's story was substantially corroborated by his brother and by the boy.

The conductor testified that Victor Hagler paid him the correct fare, and appellee then gave him a quarter, two dimes and a nickel, which was three cents less than the correct fare, but he accepted it at a loss to himself of three cents and gave cash fare receipts. He said he did this because he had on a former occasion had a few words with appellee, and did not want to renew that

trouble.  He further testified that, after demanding the return of a part of the money paid, appellee, in an offensive and angry manner, stuck his finger under his nose, and that he brushed appellee's hand aside, and that he then left the car and nothing else occurred.  Witnesses who were in the car testified that they saw something out of the ordinary had happened, but that nothing approximating an assault had occurred, and that they did not hear the conductor use any loud, abusive or insulting language.

There is a conflict in the testimony as to the extent of the injury to appellee and as to the duration of the time before the wounds healed.

The case was submitted under instructions correctly declaring the law in accordance with well known principles; and instructions numbered 4 and 5 were given at the request of the railway company, which, in effect, told the jury to find for the defendant if they believed the conductor's statement.  We assume therefore that the jury did not accept the conductor's statement, but did accept that of appellee and the witnesses who testified in his behalf.

The jury returned a verdict for appellee for $600 compensatory damages and for $900 punitive damages, and the only question in the case which requires discussion is the sufficiency of the testimony to support this recovery, as there appears to be no other error in the case.

Appellee testified that, after his discharge from the army, he had not followed any regular employment, as he was physically unable to do so, and that his only occupation consisted in taking care of the house of a brother with whom he lived and giving some attention to his brother's children, and that for this service he received his board and lodging.

Acy Hagler, appellee's brother, with whom he lived, testified that he saw appellee the night he returned from his trip to Genoa, and that appellee's fingers were

skinned up and were bloody, and that appellee was excited when he came in. This brother also testified that appellee had syphilis, although, on cross-examination, he practically withdrew the statement.

It is true appellee testified he had had no recurrence of fits after his return from the hospital until after the time of his assault. But we think it a mere matter of conjecture or speculation as to whether there was any connection between the assault and the fits. Had appellee had a fit while laboring under the excitement of that incident, it would be more probable that the assault had brought on a return of the epilepsy, but appellee testified that he did not have a fit "for a couple of days or so." No physician testified that a return of the fits might have been or might not have been caused by the assault on the train; and we think it highly speculative as to whether there was any relation between the assault and the recurrence of the fits; and, if this be true, then the judgment returned in appellee's favor is necessarily excessive.

Appellee sustained no permanent injury, there was no loss of time or even temporary diminution of earning capacity, or disfigurement of any kind, and it does not appear that any medical expense was incurred. There was, of course, certain pain, and this, appellee testified, lasted for six or seven weeks; but for this we think $250 is full compensation, and the judgment for compensatory damages will be reduced to that amount.

We are also of the opinion that the judgment for punitive damages is excessive. The testimony in appellee's behalf made a case warranting the imposition of punitive damages; but we think the sum allowed is greater than the testimony warrants. The altercation lasted only a very short time, and was not of sufficient violence to apprise persons sitting near what had occurred. It is true, of course, that it was a gross breach of duty on the part of the conductor to assault and curse and abuse a passenger; but, under all the circum-

stances, we do not think a recovery for a larger sum than $500 on that account is warranted by the testimony, and the judgment for punitive damages will be reduced to that sum.

The total judgment is therefore reduced to $750, and for that sum will be affirmed.