McGlone *v*. Stokes.

4-4607

Opinion delivered April 19, 1937.

*Elmer S. Tackett,* for appellants.

*Murphy & Wood,* for appellee.

Griffin Smith, C. J.   Perry McGlone, operating as Perry McGlone Construction Company, while engaged in paving a scenic driveway in Hot Springs National Park, and requiring dirt for construction purposes, purchased lot 5 of block 187, city of Hot Springs.  This property adjoined lot 4 of the same block.  In 1911, appellee bought part of lot 4, upon which was a two-story, six-room building.  She occupied the residence as a home for many years, but later rented it.

The appellant, E. C. Johnson, was chief engineer of construction, and had active management.  After lot 5 had been acquired, appellants began excavating on this property, but extended operations to appellee's lot, and with no right other than the power to proceed, they de-

molished the building and carted away 350 cubic yards of dirt.

The jury awarded $800 as damages—$500 actual, and $300 punitive, for which judgment was given.

There was sufficient testimony to support the judgment as to actual damages, and this phase of the appeal may be disposed of with the statement that the question was properly submitted.

After appellant McGlone, under direction of appellant Johnson, had encroached upon the property adjoining lot 5, appellee made vigorous protests which were ignored. She then caused Johnson to be arrested, but was told by the municipal judge before whom the warrant was made returnable that the controversy involved title to real estate, and that the court was without jurisdiction. Johnson, however, was directed to go with appellee to see her lawyer. In consequence, there were conversations with Judge Scott Wood, who represented appellee. In discussing the matter, Johnson claimed that the land occupied by appellee was included in McGlone's purchase of lot 5.

Suit was filed in circuit court on September 28, 1935, with McGlone and Johnson joined as defendants. Personal service was had on Johnson and a warning order was published as to McGlone. On October 16, appellee sought to attach certain personal property of the defendant, McGlone, alleging that he was preparing to move it from the state, but no writ was served. On the 29th of October, 1935, McGlone and Johnson filed answer to the complaint. It was signed: "A. T. Davies, Attorney."

On October 14, 1936—nearly a year after the answer had been filed—McGlone moved that the answer be dismissed as to him. He claimed that he was a nonresident; that, while in Arkansas in 1935, he retained A. T. Davies to represent him in the purchase of some property, but as to the suit brought by Carrie Stokes, Davies had never been employed to represent him, and was not authorized to file an answer; that he and E. C. Johnson were not partners, and that Johnson had not been authorized to engage Davies on his account; that when the suit was

filed summons was served upon Johnson, and that Johnson left the summons with Davies with instructions to represent him (Johnson), and that Davies erroneously assumed he was to represent both of them.

This motion was filed by Elmer S. Tackett as attorney for McGlone. It recites that when the case was reached for trial October 5, 1936, Davies appeared and found that he did not represent McGlone. Davies, thereupon, withdrew, and the cause was continued until October 19. In the motion, McGlone claimed that he did not know he had been sued, until October 5th. In her response, appellee alleged that Davies had been duly authorized to file the answer for both McGlone and Johnson; that at the time it was filed the sheriff of Garland county had in his hands a writ of general attachment which he was about to levy upon property belonging to McGlone; that McGlone had notice of the suit, in that summons had been left at his office with his agent, E. C. Johnson; that McGlone knew that Davies had filed the answer, and that Davies, duly acting as attorney, secured postponements of trial, and had the case re-set on two occasions; that McGlone, without objections, permitted the answer to remain in the court files for more than a year and did not question Davies' authority until after he (McGlone) had taken valuable machinery and equipment from the state. The motion was overruled.

Errors assigned by appellants are (1) that there was not sufficient evidence to justify the court in overruling the motion to strike; (2) that the judgment was excessive and was influenced by passion and prejudice; (3) that the verdict was not sustained by sufficient evidence, and is contrary to law; (4) that certain instructions should not have been given; (5) that photographs marked exhibit "B" were inadmissible; (6) that conversations between witnesses and Judge Ledgerwood, and between witnesses and Judge Wood, which took place in the presence of appellant, Johnson, should have been excluded; (7) that leading questions were asked of witnesses by appellee's attorney, and (8) that the appellant, Johnson,

should have been permitted to testify regarding his attorney's opinion as to the title to lots 4 and 5.

The only testimony on behalf of McGlone to sustain his attempted repudiation of Davies was given by Johnson, who said: "I think Mr. Davies was laboring under the impression that he was acting for both of us, but he was really filing it for me. In fact, the way that came about, I didn't pay much attention to this when it was handed to me. I took it down to my office and told him to give it to Mr. Davies and have him take care of it, and then I didn't pay any more attention to it. Mr. Davies withdrew about a year after the suit was filed. I acted in the capacity of a sort of general manager when I was here. I advised and consulted with Charlie, and usually what I said went—being chief engineer for the company or for Charlie McGlone. When the summons was served I did not read it. I just sent it down to Mr. Davies and told the man who took it down to tell Davies to take care of it. I had formerly employed Davies as an attorney to examine the abstract to the lots." Asked on cross-examination if he didn't say to Judge Wood, in connection with conversations regarding the controversy, "You'll have to take it up with our attorney, Mr. Davies, who is employed by the year," witness replied: "I might have said that; I don't recall it."

Judge Wood testified that Johnson said: "Well, we are a big outfit—it is a million-dollar outfit. Whatever damage is done, Perry McGlone can pay for it. I am going, and anything you have to say about it, you will have to see our attorney, Mr. A. T. Davies." Judge Wood was not certain whether Johnson said that Davies was employed "by the year," or "by the job," but it was one or the other.

The substance of the motion to strike is that McGlone engaged Davies to represent him in the purchase of some property, but "I never employed Davies to represent me in this case, and never authorized him to file an answer. While engaged in the construction E. C. Johnson was employed by me, but we were not partners in such project, and I never authorized said Johnson to

retain the services of an attorney to represent me in this matter."

An examination of McGlone's verification of the motion discloses that it is not an affidavit. It reads as follows: "State of Missouri, county of Jackson. I, Perry McGlone, one of the defendants in the above styled cause, hereby state on oath that the facts set forth in the foregoing motion are true and correct as I verily believe. PERRY McGLONE. Subscribed and sworn to before me this 10th day of October, 1936. JOHN C. HOUSE. (Seal) My Comm. Ex. 7-26-37."

The attestation does not disclose whether John C. House is a notary public, a justice of the peace, or an officer of some court; nor does it show anything with respect to his capacity to administer an oath. Therefore, the motion must be treated as unverified.

All actions of the parties and all attending circumstances support the conclusion that Johnson was manager in charge of construction, and that he had authority to do whatever was reasonably necessary to protect McGlone's interests. At the March, 1936, term of court this order was entered: "And it appearing to the court that A. T. Davies is confined to his bed with illness, and that said A. T. Davies is defendants' attorney, by order of the court this cause of action is passed." The record further shows an order of October 5, 1936, which reads: "Come the defendants by their attorney, A. T. Davies, and by order of the court this cause of action is continued until October 19, 1936, and the court permits A. T. Davies to withdraw from the case as attorney for the defendants."

It will be observed that, as late as October 5, Davies was appearing for both defendants, in sequence of the answer he had filed on their behalf.

In *Voss* v. *Arthurs*, 129 Ark. 143, 195 S. W. 680, this court said: "The original action was instituted by an attorney of the Jackson county bar, and there was a presumption that he was clothed with proper authority to bring the action. In addition to that, the defendants, in the original action * * * had the right to assume that the implied power of the surviving partner to institute the

action had not been restricted by a special contract." See, also, *Broadway* v. *Sidway*, 84 Ark. 527, 107 S. W. 163; *Morning Star Mining Co.* v. *Williams*, 171 Ark. 187, 283 S. W. 354.

A proper determination of the instant case depends upon whether Johnson had authority, either express or implied, to employ Davies as attorney for McGlone. Each appellant denies both the employment and the authority. The general rule is that agency may be implied from the words and conduct of the parties and the circumstances of the particular case evidencing an intention to create the relationship. 2 C. J. S., Agency, p. 1045.

In *Oak Leaf Mill Co.* v. *Cooper,* 103 Ark. 79, 146 S. W. 130, the court said: "A principal is not only bound by the acts of the agent done under express authority, but he is also bound by all acts of a general agent which are within the apparent scope of his authority, whether they have been authorized by the principal or not, and even if they are contrary to express directions. The principal * * * is not only bound by the authority actually given to the general agent, but by the authority which the third person dealing with him has a right to believe has been given to him. * * * The question in all such cases relative to the acts of a general agent is, not whether the authority of such agent was limited, but whether the person dealing with such agent had knowledge or notice of such limitation of his authority. In the absence of notice to the contrary, a person dealing with an admitted agent has a right to presume that he is a general agent, and that he is acting within the scope of his authority."

Applying this rule, we find evidence to support the contentions (1) that Johnson, acting for McGlone, had previously employed Davies as attorney to pass upon the title to lot 5; (2) that Johnson went to appellee's attorney and told him that any further conversations should be had with "their" attorney, Davies; (3) that Johnson and McGlone were jointly sued and summons was served upon Johnson; (4) that Johnson sent the summons to Davies with directions to "take care of it"; (5) that Davies, on authority of Johnson, filed an answer for both

defendants; (6) that a year passed without trial, and in the interim there were two continuances; and (7) that while suit was pending, and while appellee and her attorneys were relying on the joint answer as an entry of appearance for both defendants, McGlone moved his property from the state, and, thereafter, filed a motion and *ex parte* statement repudiating Johnson's actions in employing Davies.

At the trial McGlone neither called Davies as a witness, nor volunteered to waive the privilege which attaches to the relationship of an attorney, in order that Davies might be questioned under oath by appellee.

The jury, in reaching its verdict, must have found that Johnson had the authority to act for McGlone. The question of Johnson's right to act for McGlone as agent in destroying appellee's house and excavating dirt was submitted to the jury under instruction No. 2, given at appellee's request, which was not objected to by appellants. The right of Johnson to act in the matter of retaining Davies to defend the damage suit was not specifically presented in any instruction, nor was any instruction requested.

Appellants asked the court to instruct that there was no evidence of willful trespassing, and that punitive damages would not lie. This was refused, and exceptions saved. Appellants also requested the court to instruct as to adverse possession, and this was refused. There was no error in refusing either instruction, in view of appellants' failure to introduce testimony properly presenting the issues.

Objection was interposed to the introduction of photographs of appellee's building because they were taken several years before the acts of destruction complained of were set in motion. Appellants are in no position to seriously pursue this objection, for by their own conduct they created a situation where appellee could not procure more timely photographs.

Whether punitive, or exemplary, damages should be awarded in a given case is a matter ordinarily resting within the discretion of the jury, under proper instruc-

tions, if the defendant is shown to have been guilty of excesses accompanied by conduct indicating a wanton disregard of the rights of the adverse party. The act complained of must be attended by some element of malice, fraud, or gross negligence; and negligence, however gross, is not sufficient to justify an award by way of punishment in the absence of any showing of intentional wrong or willfulness or conscious indifference to consequences from which malice may be inferred. *Citizens Street Railway* v. *Steen,* 42 Ark. 321; *Southern Telephone Co.* v. *King,* 103 Ark. 160, 146 S. W. 489, 19 L. R. A. (N. S.) 402, Ann. Cas. 1914B, 780; *Hodges* v. *Smith,* 175 Ark. 101, 298 S. W. 1023.

The evidence was sufficient to justify the jury in regarding the acts of appellants as grossly negligent and malicious. Appellee, through her attorney, undertook to discuss her status, and a fair inference may be drawn from the testimony that appellants were determined to accomplish their arbitrary objectives regardless of any rights that appellee, a negress, may have had. The conduct was arrogant in the extreme, and no error was committed in submitting the question to the jury, nor were the instructions improper. The recovery is not excessive.

Other errors complained of by appellants were not prejudicial.

Affirmed.