· ROBERTSON OIL COMPANY,
INC., Appellee,

v.

PHILLIPS PETROLEUM COMPANY,
Appellant.

No. 91–3717.

United States Court of Appeals,
Eighth Circuit.

Submitted June 8, 1992.

Decided Nov. 18, 1992.

Rehearing En Banc Granted,
Judgment and Opinion Vacated
Jan. 27, 1993.

Theodore Olson, Washington, D.C., argued (Robert Jones, Fort Smith, Ark., Neal Lehman, Bartlesville, Okl., and Herschel Friday, William Sutton, and Kevin Crass, Little Rock, Ark., on the briefs), for appellant.

Julius Glickman, Houston, Tex., argued (William Wilson, Jr., Little Rock, Ark., on the briefs), for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Phillips Petroleum Company appeals from a district court[1] order refusing to vacate two punitive damage awards—$4,000,000 for tor-

1. THE HONORABLE MORRIS SHEPPARD ARNOLD was United States District Judge for the Western District of Arkansas at the time this case was submitted and was appointed Circuit Judge of the United States Court of Appeals for the Eighth Circuit on June 1, 1992.

tious interference with a business relationship and $4,000,000 for fraud—after the remand we ordered in *Robertson Oil Co. v. Phillips Petroleum Co.,* 930 F.2d 1342 (8th Cir.1991). Phillips now argues that the district court erred in reviewing the punitive damage awards by applying the Arkansas "shock the conscience" standard because that standard does not constrain the jury's discretion when awarding punitive damages so as to satisfy due process considerations. Phillips also argues that the two $4,000,000 awards are grossly disproportionate, arbitrary, capricious, and fundamentally unfair in violation of due process, duplicative, and an abuse of discretion, and that the jury's deliberations were impermissibly influenced by inflammatory evidence of Phillips' wealth. We affirm the punitive damage awards.

The case is now before us for the third time, and we need not repeat the underlying substantive facts, which are set out in our two earlier decisions: *Robertson Oil Co. v. Phillips Petroleum Co.,* 871 F.2d 1368, 1369 (8th Cir.1989); and *Robertson II,* 930 F.2d at 1342.

The first trial in this case resulted in verdicts against Phillips for fraud, negligence, and tortious interference with a business relationship;[2] an actual damage award of $750,000; and a punitive damage award of $5,000,000. *Robertson I,* 871 F.2d at 1369. We affirmed the tortious interference verdict, but reversed the negligence and fraud verdicts as inconsistent. *Id.* We upheld the actual damage award because it was based on only one injury, the loss of the Spe–Dee Mart account, and the tortious interference verdict established Phillips' liability for that injury. *Id.* at 1376. We struck the punitive damage award, however, because a jury must consider the defendant's conduct when it determines the amount to award, and the general verdict form in this case made it impossible for us to determine how much of the punitive damage award was based on the conduct the jury associated with each of its findings of liability. *Id.* We said that "[e]ach of these theories ... would support a

different amount of punitive damages depending upon the conduct involved." *Id.* Some of the punitive damage award may have been based on the conduct underlying the negligence and fraud theories that were reversed. *Id.* Therefore, the case was remanded for retrial of the negligence and fraud claims and the punitive damage award. *Id.* at 1377.

The second trial resulted in a verdict against Phillips on the fraud claim,[3] and punitive damage awards of $4,000,000 for fraud and $4,000,000 for tortious interference. *Robertson II,* 930 F.2d at 1343. Phillips appealed again. *Id.* We rejected various claims of error, but because of the intervening United States Supreme Court decision in *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), we remanded with instructions for the district court to consider the propriety of the punitive damage awards under the principles of *Haslip* and Arkansas law. *Robertson II,* 930 F.2d at 1347.

■ On remand, the district court first analyzed the punitive damage awards under the Arkansas court's "shock the conscience" standard. This standard allows punitive damage awards to stand unless the amount shocks the conscience of the court or demonstrates that jurors were motivated by passion or prejudice. *O'Neal Ford, Inc. v. Davie,* 299 Ark. 45, 770 S.W.2d 656, 659 (1989). The district court studied the historical development of the "shock the conscience" standard and determined that the standard's "long and distinguished history ... bears testimony to its utility and constitutionality." *Robertson Oil Co. v. Phillips Petroleum Co.,* 779 F.Supp. 994, 996 (1991). The court then examined Arkansas cases applying the standard and concluded that the Arkansas Supreme Court had enumerated a number of specific inquiries which gave the standard a definite "shape and texture." *Id.* The district court concluded that the standard was not too subjective and that the review crite-

---

2. The jury also found Phillips liable for breaching the duty of good faith and fair dealing, but the district court overturned this finding.

3. Robertson retried both the fraud and negligence issues, but elected to submit only the fraud theory to the jury.

ria and procedures ensured a "meaningful and adequate review by the trial court" as required by *Haslip*, — U.S. —, 111 S.Ct. at 1044, and therefore, satisfied due process. 779 F.Supp. at 997. The district court then applied the Arkansas review criteria and allowed the awards to stand. *Id.* at 997–98.

## I.

Phillips advances a multi-faceted argument that the Arkansas "shock the conscience" standard of review does not adequately constrain the discretion of juries to impose punitive damages so as to satisfy due process. Expanding this general argument, Phillips asserts that "standardless" and virtually unlimited jury discretion to punish and highly deferential judicial review of punitive damage verdicts render the Arkansas system constitutionally defective under *Haslip*. Phillips argues that application of the Arkansas standard of malice has been inconsistent and unpredictable, and that there is no fixed standard for the measurement of punitive damages or legislatively defined range. Phillips further argues that there is no reasonable relationship between the compensatory and punitive damage awards. Phillips then launches into a more specific attack on the "shock the conscience" standard, and asserts that federal courts applying Arkansas law have taken a broad brush approach to this standard. Phillips also argues that the Supreme Court approved the punitive damage system in *Haslip* because Alabama limited jury discretion and had a two layered post-verdict review procedure for evaluating the propriety of punitive damages. Finally, Phillips argues that the district court's application of the Arkansas "shock the conscience" standard was constitutionally flawed.

Phillips' broad based arguments fail to recognize the scope and nature of the district court's review of the punitive damage awards, and in truth, fail to recognize the review that Arkansas courts have made of punitive damage awards.

When the district court analyzed the punitive damage awards, it first considered the Arkansas "shock the conscience" standard and the question of whether jurors were motivated by passion and prejudice. 779 F.Supp. at 995–96. The court engaged in an historical analysis of the "shock the conscience" standard in Arkansas cases, as well as earlier English cases, and then examined the awards under the standard in *Haslip*. *Id.* at 996–98. The district court observed that the Arkansas Supreme Court has given the "shock the conscience" standard a "definite shape and texture" by engaging in a number of specific inquiries. *Id.* at 996. The district court stated:

> For example, the [Arkansas Supreme C]ourt has examined the relationship between the relevant parties, the ratio of the punitive award to the compensatory award, the extent and duration of a defendant's acts, the deliberateness of the defendant's acts in the face of no justification for them, the defendant's motives, the defendant's remorse, if any, the defendant's net worth, and other matters, in order to judge the propriety of a punitive award.[4]

*Id.* at 996–97. Applying these criteria, the district court observed that not one, but two juries had unanimously awarded punitive damages on findings that Phillips had committed two intentional torts, and that the ten-to-one ratio of punitive damages to actual damages did not suggest excessiveness in light of Phillips' net worth. *Id.* at 997. The district court rejected Phillips' assertion that Phillips' net worth triggered passion and prejudice on the part of the jurors, because evidence of net worth had not been allowed until the jury made a finding of liability and

---

4. The district court cited these Arkansas Supreme Court decisions in support of this enumeration: *Walt Bennett Ford, Inc. v. Keck*, 768 S.W.2d 28 (Ark.1989); *First Commercial Bank v. Kremer*, 292 Ark. 82, 728 S.W.2d 172 (1987); *Twin City Bank v. Isaacs*, 283 Ark. 127, 672 S.W.2d 651 (1984); *Pursley v. Price*, 283 Ark. 33, 670 S.W.2d 448 (1984); *Matthews v. Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983); *Ray Dodge, Inc. v. Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972); *Holmes v. Hollingsworth*, 234 Ark. 347, 352 S.W.2d 96 (1961); *Vogler v. O'Neal*, 226 Ark. 1007, 295 S.W.2d 629 (1956); *McGlone v. Stokes*, 193 Ark. 1008, 104 S.W.2d 191 (1937); *St. Louis Southwestern Ry. Co. v. Hagler*, 160 Ark. 543, 254 S.W. 1071 (1923); *Gordon v. McLearn*, 123 Ark. 496, 185 S.W. 803 (1916); and *Pine Bluff & Arkansas River Ry. Co. v. Washington*, 116 Ark. 179, 172 S.W. 872 (1915).

fixed the compensatory amount. *Id.* at 998. Finally, the court stated that the nervous and uncertain behavior of Phillips' witnesses could have caused a reasonable fact finder to believe that they were deliberately evasive and had guilty minds. *Id.*

■ It is evident that the district court considered not only whether the awards shocked the conscience or resulted from passion and prejudice, but also specifically recognized and discussed other factors that numerous Arkansas courts have considered in reviewing punitive damage awards. *Id.* at 996–97. The district court's failure to discuss all the enumerated considerations does not mean that the other factors were not considered. We are satisfied that the district court's analysis properly recognized that although the Arkansas court's "shock the conscience" and passion and prejudice inquiries are broad, the Arkansas cases recognize far more specific issues in their analyses. The district court dealt with a number of the more specific issues, and properly reviewed the issue of punitive damages in light of the Arkansas standards.

Thus, because the district court engaged in a detailed analysis, Phillips' argument that the "shock the conscience" standard does not satisfy due process considerations simply misses the mark. The district court's inquiry was far more specific than this, as is the standard enunciated and the review conducted by Arkansas courts. In our earlier opinions, *Robertson I*, 871 F.2d at 1375–76, and *Robertson II*, 930 F.2d at 1346–47, we discussed the elements underlying punitive damage awards and referred to *Holmes v. Hollingsworth*, 234 Ark. 347, 352 S.W.2d 96 (1961), and *Ray Dodge, Inc. v. Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972). *Ray Dodge* is particularly instructive.

In *Ray Dodge*, the Arkansas Supreme Court concluded that a punitive damage award was based on a finding of legal malice and was not so great as to "shock the conscience" of the court or to indicate passion or prejudice on the part of the jury. 479 S.W.2d at 523. The Arkansas court stated that punitive damages are "the penalty the law fixes for conduct which is malicious, wanton, in violation of a relationship of trust or

confidence, or which is done with a deliberate intent to injure another." *Id.* The court emphasized that the punitive damage award must not only "deter similar conduct on the part of the particular tortfeasor," but "must also be sufficient to deter others who might be inclined to engage in such conduct." *Id.* The court observed that although the jury had discretion in fixing the amount of punitive damages, the circumstances in *Ray Dodge* showed the jury had exercised its discretion soundly. The *Ray Dodge* facts indicated that the defendant had committed a deliberate wrong, which, if unpunished, might lead to widespread commercial fraud. *Id.* at 524. The court believed the jury's award was not based on passion and prejudice, but rather evidenced "a legitimate concern for the possible consequences of such a practice" to the general public. *Id.*

The court in *Ray Dodge* then considered particular factors governing the proper amount of punitive damages, including the proportion of punitive to actual damages, the defendant's culpability as shown by the actual damages awarded, the defendant's motives, the degree of calculation involved, and the extent of the defendant's disregard of the rights of others. *Id.* *Ray Dodge* fleshes out the "shock the conscience" standard with considerable detail.

The district court's analysis in this case covered the same ground as *Ray Dodge* and *Holmes*. In light of the district court's detailed analysis, Phillips' arguments against the "shock the consequence" standard have no merit.

Like Phillips, we recognize that in *Haslip* the United States Supreme Court considered the Alabama procedures as laid down in recent Alabama Supreme Court decisions, and determined that the procedures for reviewing punitive damage awards met constitutional standards. 499 U.S. 21–22, 111 S.Ct. at 1045. The Alabama court's procedures included requiring the trial court to review the award by considering the culpability of defendant's conduct, the desirability of discouraging others from similar conduct, the impact on the parties involved, and the impact on innocent third parties. *Id.* at 499 U.S. at 19–20, 111 S.Ct. at 1044. The Alabama court had pro-

vided additional checks, first, by engaging in a comparative analysis, and then, by applying substantive standards—considering whether the award exceeded the reasonable amount that would accomplish society's goals of punishment and deterrence. *Id.* at 499 U.S. at 21–22, 111 S.Ct. at 1045. The Alabama court had indicated that many factors could be considered in determining whether an award was excessive or inadequate:

> (a) whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred; (b) the degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct; (c) the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss; (d) the "financial position" of the defendant; (e) all the costs of litigation; (f) the imposition of criminal sanctions on the defendant for its conduct, these to be taken in mitigation; and (g) the existence of other civil awards against the defendant for the same conduct, these also to be taken in mitigation.

*Id.* The United States Supreme Court concluded that these standards imposed a sufficiently definite and meaningful constraint on the discretion of Alabama juries in awarding punitive damages. *Id.* The Supreme Court concluded:

> The Alabama Supreme Court's post-verdict review ensures that punitive damages awards are not grossly out of proportion to the severity of the offense and have some understandable relationship to compensatory damages. While punitive damages in Alabama may embrace such factors as the heinousness of the civil wrong, its effect upon the victim, the likelihood of its recurrence, and the extent of defendant's

wrongful gain, the fact finder must be guided by more than the defendant's net worth. Alabama plaintiffs do not enjoy a windfall because they have the good fortune to have a defendant with a deep pocket.

*Id.*

Although the items the district court considered in this case do not match the *Haslip* factors identically, they coincide for the most part, and insofar as the district court did not consider some of the *Haslip* factors, the record reveals that they were inapplicable. We are satisfied that the district court's review complies with the principles laid down in *Haslip.*[5]

Phillips argues that a number of post-*Haslip* decisions in other circuits require reversal of the punitive damage awards in this case. The Fourth Circuit in *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95 (4th Cir. 1991), reversed a punitive damage award because South Carolina procedures did not provide for adequate jury instructions or criteria by which a court could measure excessiveness. As discussed above, the Arkansas Supreme Court has established criteria for measuring excessiveness, those criteria were applied, and the district court concluded that the awards were not excessive. Although the *Mattison* court engaged in an interesting discussion about the interplay between South Carolina law and federal law, the district court in this case stated that its review and conclusion would be the same under either federal or state law.[6] Thus, the result in *Mattison* arises from a different legal context, and insofar as *Mattison* is not distinguishable on its facts from this case, we find it unpersuasive. Likewise, the decision of the Tenth Circuit in *Mason v. Texaco, Inc.*, 948 F.2d 1546 (10th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992), applying a "shock the conscience" standard to reduce a $25,000,000

---

**5.** One possible exception, however, may exist regarding the overlap Phillips claims exists between the punitive damage award for fraud and the punitive damage award for intentional interference with a business relationship. We will discuss this issue in Part II.

**6.** For a discussion of the federal standard used to review damage awards, see *Slatton v. Martin K. Eby Construction Co.*, 506 F.2d 505, 507–09 (8th Cir.1974), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975).

verdict to $12,500,000, is simply distinguishable on its facts.

On the other hand, we are impressed with the Fifth Circuit's analysis in *Eichenseer v. Reserve Life Insurance Co.*, 934 F.2d 1377 (5th Cir.1991). Even though the Mississippi procedural protections were less specific than the Arkansas procedures we discussed above, the court affirmed a punitive damage award. *Id.* at 1385–86. We recognize that *Eichenseer* was a court-tried case, but its analysis is close to the analysis in this case, it considers many of the same factors, and it supports our decision that the district court's conclusion be affirmed. *See also Glasscock v. Armstrong Cork Co.*, 946 F.2d 1085 (5th Cir.1991) (affirming a $6,100,000 punitive damage award based on Texas law considering five factors— fewer than considered in Arkansas), *cert. denied*, —— U.S. ——, 112 S.Ct. 1778, 118 L.Ed.2d 435 (1992).

Phillips asserts that *Haslip* also dealt with instructions to the jury and asks us to review the instruction given in this case. In *Robertson II*, we held that the instruction given was comparable to that approved in *Haslip*, and that Phillips had waived any defect by failing to offer a more detailed instruction and failing to bring to the court's attention the need for the jury to consider the nature and degree of the wrong—the only *Haslip* factor that was not part of the instruction. *Robertson II*, 930 F.2d at 1347. Phillips invites us to reconsider the issue, particularly in light of this court's later decision in *Union National Bank v. Mosbacher*, 933 F.2d 1440 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 870, 116 L.Ed.2d 775 (1992).[7] We,

however, do not think *Mosbacher*[8] supports a contrary result on the specific instruction and the record before us in this case. We decline the invitation to revisit this issue.

Phillips also questions whether malice supports an award of punitive damages and was properly submitted in this case. In *Robertson I*, we recognized that the jury had been required to find that Phillips intentionally pursued a course of conduct for the purpose of causing harm in an instruction based on the standard for malice established by the Arkansas Supreme Court. 871 F.2d at 1375. The jury in the first trial made such a finding with respect to the tortious interference claim. *Id.* at 1372–73, 1376; *Robertson II*, 930 F.2d at 1344–45. The jury in the second trial was instructed that this finding had been made by the first jury. 930 F.2d at 1344 n. 1, 1345. The second jury was also instructed that under the fraud theory Robertson had the burden of proving that Phillips intentionally pursued a course of conduct for the purpose of causing injury or damage.[9] This forthright submission of the issue of malice is a complete answer to Phillips' argument that malice is a flexible issue under Arkansas law.

Although Phillips articulates other reasons in support of its claim that the punitive damage awards are unconstitutional and legally improper, what we have said above adequately disposes of all such claims.

## II.

■ Phillips next argues that the two $4,000,000 punitive damage awards are dupli-

---

7. The dissent disregards the principles of the law of the case by arguing that both *Robertson I* and *Robertson II* were wrongly decided. Four judges of this court and one district court judge, sitting by designation, participated in those decisions, and in both cases this court denied rehearing en banc.

If, contrary to principles of the law of the case, we were to reexamine the propriety of our discussion in *Robertson II* concerning the punitive damage instruction, we note that Phillips failed to offer an instruction that elaborated on the standard for setting the amount of punitive damages. Phillips also offered its own variation of the Arkansas form instruction, which repeated the standard for awarding punitive damages and informed and allowed the jury to consider its financial condition, just like the instruction given. This record prohibits us from reconsidering

the constitutional propriety of the instruction as the dissent would do.

8. The dissent further ignores principles of stare decisis in citing and relying on *Union National Bank v. Mosbacher*, 933 F.2d 1440 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 870, 116 L.Ed.2d 775 (1992), an opinion authored by the dissenting judge. Although *Mosbacher* was decided thirty-five days after *Robertson II*, it expressed different views on the Arkansas punitive damage instruction.

9. Instruction No. 16 stated: "In order to recover punitive damages from Phillips, Robertson Oil has the burden of proving that Phillips intentionally pursued a course of conduct for the purpose of causing injury or damage."

cative and, therefore, constitutionally excessive. The basic assumption of Phillips' argument is that, although Robertson premised its claims on two separate liability theories, it suffered but a single "inseparable" injury— the loss of the Spe–Dee Mart account—giving rise to punitive damages.

Robertson responds that the jury returned two punitive damage awards: one based on fraud; the other on tortious interference with contract. Robertson points to this court's opinion in the first appeal to support its argument that there were two theories submitted to the jury, each of which would support a different punitive damage award, depending upon the conduct involved. In *Robertson I,* we stated that "[t]he district court correctly analyzed that all of the liability theories rested upon only one basis for actual damages, the loss of the Spe–Dee Mart account." 871 F.2d at 1376. In discussing punitive damages, we looked to Arkansas Supreme Court decisions discussing punitive damages. These provide that an assessment of punitive damages involves consideration of: the nature, extent, and enormity of the wrong; the intent of the party committing the wrong; and the general circumstances of the particular transaction involved, including any mitigating circumstances, and the financial and social condition and standing of the parties. *Id.* at 1375–76. We recognized that the amount of actual damages is one indication of the "culpability of the defendant." *Id.* at 1376 (quoting *Ray Dodge,* 479 S.W.2d at 524). We concluded:

> The conduct of Phillips relevant to an award of punitive damages necessarily differs according to the various theories of liability on which the jury based its verdict.

> . . . . .

> We are troubled, however, with the interplay between the considerations involved in compensatory and punitive dam-

ages. As we have explained above, the conduct of a defendant determines the amount of punitive damages. The tortious interference with a business relationship, fraud, and good faith and fair dealing theories, all intentional torts which support the punitive damage award, each involve different conduct. Each of these theories therefore would support a different amount of punitive damages, depending upon the conduct involved.

*Id.* at 1376.

At the second trial, the court instructed that an earlier jury had found tortious interference with a contractual relationship. The court then authorized the jury to award punitive damages on this theory. The court further instructed the jury as to the elements of fraud, and that it could award punitive damages on the fraud theory. The court submitted special interrogatories to the jury, and the jury awarded $4,000,000 as punitive damages on each of the theories.[10]

This court considered an award authorizing a trebling of damages under RICO and an award of punitive damages under common law fraud and conversion in *Holmberg v. Morrisette,* 800 F.2d 205 (8th Cir.1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1953, 95 L.Ed.2d 526 (1987). We affirmed the finding of liability on the fraud and conversion claims, reversed the award on the RICO claim, and remanded for a new trial on the issues of actual and punitive damages. *Id.* at 212. We explained:

> [We] note that a recovery of compensatory damages on both the fraud and conversion claims clearly would be duplicative and should not be allowed. Holmberg has suffered only one injury—the wrongful drawing down of his letter of credit—and is entitled to be compensated for that injury only once. Similar reasoning applies to the question of punitive damages on both

---

10. The jury was instructed in the second trial that Robertson was damaged in the amount of $750,000, that Robertson had already been awarded this amount for compensatory damages, and that no award should be made to compensate Robertson for its loss of the Spe–Dee Mart account on either the allegations of fraud or intentional interference with contract. The instructions further stated that in addition to com-

pensatory damages for actual loss, Robertson asked for punitive damages for both intentional interference with contract and fraud, and the jury was instructed to separately consider punitive damages on each of these theories. Contrary to the dissent, it is evident that the single award of compensatory damages was the basis for the punitive awards on both tortious interference and fraud.

the fraud and conversion claims. Fraud and conversion are separate legal theories of liability, but in reality defendants have injured Holmberg only once. Accordingly, they are to be punished only once, not as many times as there are separate legal theories that have been found to fit the case.

*Id.* Similarly, in *Superturf, Inc. v. Monsanto Company,* 660 F.2d 1275 (8th Cir.1981), we held that a treble damage award under anti-trust laws and a punitive damage award for tortious interference with business were duplicative and could not be awarded. *Id.* at 1283 (relying on *Arnott v. American Oil Co.,* 609 F.2d 873, 878 (8th Cir.1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980)).

The Arkansas Supreme Court faced a somewhat similar question in *Stoner v. Houston,* 265 Ark. 928, 582 S.W.2d 28 (1979) (en banc). The plaintiff had recovered both an award for treble damages to timber under Ark.Code Ann. § 50–105 and punitive damages for common law trespass. 582 S.W.2d at 30–31. The Supreme Court of Arkansas held that this recovery "amounted to a double punitive recovery for the illegal act." *Id.* at 31. The court reasoned that the elements of damage were the same under both theories and a double recovery was prohibited. *Id.* Justice Fogleman dissented, arguing that the trespass caused by the scraping of a bulldozer blade was separate and distinct from the act of cutting and destroying trees. *Id.* He suggested that these were two separate items of damages, and punitive damages would lie for each injury. *Id.*

The Minnesota Court of Appeals addressed a similar issue in *Bradley v. Hubbard Broadcasting, Inc.,* 471 N.W.2d 670 (Minn.App.1991). In *Bradley,* a former employee sued her employer on a number of claims, including defamation, breach of implied covenant of good faith and fair dealing, and reprisal discrimination. *Id.* at 673. The basis for the employee's suit began when the employee pieced together, from scraps of paper she found near a photocopier, a memo detailing her supervisor's desire to fire her, and outlining her involvement in two employment disputes with other employees. *Id.*

After the employee's supervisor learned of the employee's action, he fired the employee, and circulated a memo claiming the employee retrieved the first memo from his wastebasket. *Id.* Managers were told that the employee was fired for "gross misconduct." *Id.* at 674. The jury found the employer liable for defamation and breach of an implied covenant of good faith and fair dealing, and awarded $12,000 in compensatory damages and $500,000 in punitive damages. *Id.* at 673–74. The employee's claims of discrimination were simultaneously tried to the court, which concluded that the employee had been subjected to reprisal discrimination, awarded compensatory and punitive damages, and assessed a civil penalty under the Minnesota Human Rights Act. *Id.* at 674.

On appeal, the Minnesota Court of Appeals considered whether the employee received a double recovery of compensatory and punitive damages. After concluding the compensatory damage awards were based on discrete events and were not duplicative, *id.* at 677, the court considered the punitive damage awards. The court first concluded there was no duplication between the civil penalty and the punitive damage award under the Human Rights Act because the civil penalty was "intended to supplement compensatory and punitive damages." *Id.* at 678. The court concluded, however, that there was duplication between the penalty under the Human Rights Act and the jury punitive damages award on the defamation claim. *Id.* The court reasoned that it "was likely" that the jury based its punitive damage award on the same misconduct for which the trial court imposed the civil penalty, and that the trial court did not tell the jury of the penalty as part of the reprisal claim. *Id.* at 678. The appellate court also decreased the punitive damage award relying on *Haslip. Id.* at 679.

This leaves us with the question of whether the punitive damage awards in this case are duplicative. Considering the awards under principles of Arkansas law, the actual damages are identical under each of the theories submitted to the jury. Similarly, the financial and social condition and the standing of the parties, are identical with respect to both punitive damage awards.

On the other hand, the nature, extent, and enormity of the wrong, the intent of the party committing it, and the general circumstances attending the particular transaction involved, differ with respect to each of the two awards. These differences are evidenced by the specific jury instructions on each claim. The court instructed the jury that an earlier jury had found the several elements which entitled Robertson to recover for tortious interference with contract. The court instructed the jury that the previous jury had found:

First, that there was a valid contract between Robertson Oil Company and Spe–Dee Mart; second, that Phillips Petroleum knew of that contract; third, that Phillips intentionally interfered with that contract by inducing or causing its termination; fourth, that with respect to intentional interference with contract, Phillips was not acting in its own fair interest based upon reasonable economic and business considerations, but with an intent to cause injury or damage to Robertson Oil Company.

The court then instructed the jury on the elements of fraud, stating that the jury should find for Robertson on its fraud claim if it found:

First, that Phillips made false statements of material fact to Robertson Oil; second, that Phillips knew or believed that the statements were false or lacked a sufficient basis of information to make the statement; third, that Phillips intended to induce Robertson Oil to act or to refrain from acting in reliance on the statements; fourth, that Robertson Oil justifiably relied on the statements in acting or refraining from acting; and fifth, that the actions of Phillips were a proximate cause of damages to Robertson Oil.

With respect to Robertson's claims for punitive damages, the court instructed the jury that it must find that Phillips "intentionally pursued a course of conduct for the purpose of causing injury or damage." The court also instructed that the purpose of punitive damages was "to punish a wrongdoer and to deter others from similar conduct." These aspects of the punitive damage instruction relate directly to the nature, extent, and enormity of the wrong and the intent of the party committing the wrong. It is evident that the jury's deliberations were directed to two different torts and two different injuries, each of which supports an award of punitive damages.

There is one further element in the equation. In the first appeal, Phillips argued against the single punitive damage award returned in the first trial, taking the position that there were in fact two separate injuries. Phillips' reply brief in *Robertson I* argues that there are two bases for punitive damages:

The punitive damages award herein is in the form of a general or "global" verdict. It is impossible to apportion the award among the various theories of liability found by the jury, because none of the liability interrogatories refer to punitive damages, but only to "damages" in general, and neither of the punitive damages interrogatories are tied to specific torts.

Punitive damages are not intended to compensate an injured party, but to punish and deter conduct of the offending party. Therefore, the existence and size of an award of punitive damages depends upon the conduct of the defendant, not upon the loss to the plaintiff. The loss to Robertson Oil reflected in the compensatory damages interrogatory has no bearing on the punitive damages award.

Phillips' argument continues and makes specific the two differing timeframes of the conduct that might support punitive damages:

Phillips' relevant conduct differs according to the various theories of liability affirmatively answered by the jury. The key conduct on the tortious interference count allegedly occurred during the meeting between the Phillips representatives and Spe–Dee Mart. However, Phillips' relevant conduct on the fraud, negligence and bad faith counts occurred prior to that time, i.e., in the period up to the October, 1984 meeting between Phillips and Robertson Oil. Yet the jury was permitted to assess punitive damages on every action of Phillips from May through October, 1984, i.e., on *all* conduct of Phillips which sup-

ported *all* of the elements of *all* of the causes of action represented by interrogatories Nos. 2–5.

█ To accept Phillips' argument that both punitive damage awards spring from but one injury requires that we reach a conclusion totally at odds with that embraced by Phillips in the first appeal, a conclusion which led to our holding that separate elements are to be considered in awarding punitive damages, depending upon the nature of the tort involved. *Robertson I*, 871 F.2d at 1376. Although we affirmed only a single award of actual damages in *Robertson I*, we are convinced that there were two distinct wrongs giving rise to punitive damages, and Phillips is bound by its admission in the first appeal.[11] In a sense, as Robertson argues, Phillips got what it asked for in the second trial, namely, separate consideration of the punitive damage issue and a separate award by the jury. Phillips is bound in this litigation by the position it took in the first appeal, and its answer that there are duplicative punitive damage awards is most effectively answered by the arguments it asserted in the first appeal. Under these circumstances, we do not believe that the common factors in the two punitive damage awards—namely the amount of actual damages for the single injury and Phillips' net worth—are sufficient to justify a different conclusion.

The jury instructions and the juries' answers to the interrogatories show that the jury based its punitive damage awards on two different tort theories. Phillips argues that the key conduct on the tortious interference count occurred during the meeting between Phillips' representatives and Spe–Dee Mart, which we know from *Robertson I*, occurred in October 1984. *See* 871 F.2d at 1370. The relevant conduct with respect to the fraud, however, occurred in the period between May and the time of the October 1984 meeting. *Id.* at 1369–70. Phillips has thus divided the conduct subject to punitive damages into two distinct timeframes, the day of the meeting, and the five-month period leading up to that meeting.

It is evident here that the jury found two separate patterns of conduct: the meeting in October 1984 gave rise to the tortious interference punitive damage award, and the conduct during the five-month period leading up to but not including that meeting gave rise to the fraud claim. Thus, the case differs from *Holmberg*, in which this court held that the defendants had injured Holmberg only once and, accordingly, should be punished only once. *See* 800 F.2d at 212. Similarly, the case differs from *Superturf*, in which the duplication was found between a treble damage award under antitrust statutes, and a punitive damage award for tortious interference with business. *See* 660 F.2d at 1283. *Stoner v. Houston* is distinguishable for the same reason. *See* 582 S.W.2d at 30–31. While Minnesota law does not control this case, the decision of the Court of Appeals of Minnesota in *Bradley v. Hubbard Broadcasting, Inc.*, 471 N.W.2d 670, is also factually distinguishable. That court concluded that the jury assessed its punitive damage award on the same misconduct which the trial court punished by assessing a civil penalty. *Id.* at 678. Here, although there was a single compensatory injury, there were two separate wrongs supporting the punitive damage awards, and the awards are not duplicative.

The record is silent as to whether Robertson requested a cautionary or limiting instruction to guard against the jury considering overlapping conduct on each of the two punitive damage claims. It should have been evident that by submitting two specific claims for punitive damages on two different

---

11. Judicial estoppel bars a party from taking inconsistent positions in the same litigation. *Morris v. California*, 966 F.2d 448, 452 (9th Cir. 1991), *cert. denied,* — U.S. ——, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992). As the Ninth Circuit recently explained, there are two views regarding the applicability of the doctrine. The majority of circuits hold that judicial estoppel does not apply unless the inconsistent statement was actually adopted by the court in the earlier litigation. *Id.* at 452 (citations omitted). The First Circuit, however, holds that the doctrine applies even when the litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing "fast and loose" with the court. *Id.* at 453 (citing *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987)). We need not decide in this case whether to adopt the majority or minority view, in either instance, Phillips is estopped from asserting that there was only one wrong.

theories the potential existed for this to occur. Further, we do not know whether Phillips raised the question of duplication before the district court. Certainly, it was not discussed in the district court order, and such an argument was not pressed in the second appeal of this case. *See Robertson II,* 930 F.2d 1342.

We conclude that the punitive damage awards are not duplicative, and we note that each of the jury awards was approximately five and one-third times the actual damage award. The two together are approximately eleven times the actual damage award. On the record before us, we do not believe that such an amount is sufficient to shock the judicial conscience or to demonstrate that the jury was motivated by passion and prejudice. As the district court observed, strong issues of credibility arose in the trial of the case. The district court specifically commented that a reasonable factfinder could have thought Phillips' principal witnesses were deliberately evasive and that they had guilty minds. Under such circumstances, we should not disturb the jury verdict, and we do not believe that *Haslip,* 499 U.S. 1, 111 S.Ct. 1032, or due process principles require us to do so.

We affirm the judgment of punitive damages for fraud in the amount of four million dollars, and for intentional interference with contract in the amount of four million dollars.

BEAM, Circuit Judge, dissenting.

I respectfully dissent. Cases like this must have been on the mind of the Supreme Court when, in *Pacific Mutual Life Ins. Co.*

*v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), it said "[w]e note once again our concern about punitive damages that 'run wild.'" *Id.* at 17–18, 111 S.Ct. at 1043. My concern comes in three parts and dates back to *Robertson Oil Co. v. Phillips Petroleum Co.,* 871 F.2d 1368 (8th Cir.1989) (*Robertson I* ).

I.

In *Robertson I,* as noted in the majority opinion, we analyzed several theories of recovery advanced by the plaintiff, found all but one of them wanting, and reversed for a partial new trial. We conceded that the district court was correct in finding that "all of the liability theories rested upon only one basis for actual damages." *Id.* at 1376. We embraced the statement of the district court that, concerning actual damages, "All roads lead to Rome." *Id.* Instead of remanding for a new trial on all issues, however, we let stand a $750,000 judgment supported by a jury finding of "tortious interference with contract." *Id.* at 1369 & 1376. This was, in my view, an incorrect approach, for the reasons I set forth in my concurrence in *Ledferd v. Dowd,* 979 F.2d 661, 677 (8th Cir. 1992).[1] Although *Ledferd* involved a constitutional tort, the principles and policies I referred to there apply here as well.

II.

As noted by the majority, by the time we looked at this matter again, *Robertson Oil Co. v. Phillips Petroleum Co.,* 930 F.2d 1342 (8th Cir.1991) (*Robertson II* ), *Haslip* had

---

**1.** The author of the majority opinion (the author of *Robertson I* and *Robertson II* ) states that I disregard the principles of the law-of-the-case. I fully understand his discomfort with my suggestions that errors may possibly have been made at earlier times in this dispute, and, we do deal with the *same* dispute today that we were dealing with in *Robertson I* and *Robertson II.* With the greatest respect, I suggest that there seems to be a modicum of misunderstanding between us on the law-of-the-case doctrine. This circuit has said that the "law-of-the-case doctrine is a discretionary one." *United States v. Callaway,* 972 F.2d 904, 906 (8th Cir.1992). I concede that a decision in a prior appeal is usually followed "unless ... the prior decision is clearly erroneous and works a manifest injustice." *Id.* at 905. Or, if

the facts have changed since the earlier appeal, the doctrine is not followed. *Little Rock School Dist. v. Pulaski,* 971 F.2d 160, 165 (8th Cir.1992). I believe we are faced with some change in the facts due to the evidence adduced at the trial level and also with the possibility of manifest injustice to Phillips as the case has now developed. Finally, the doctrine applies only to issues decided by final judgments. *Peterson v. General Motors Corp.,* 975 F.2d 518, 522 (8th Cir.1992) (citing *Smith v. Mark Twain Nat'l Bank,* 805 F.2d 278, 286 n. 16 (8th Cir.1986)). Until we have acted on the appeal before us and all subsequent review has been denied, we have no final order on the issues of punitive damages raised today by Phillips.

arrived on the scene. The Supreme Court stated that the "rational decisionmaking" required by the due process clause includes jury instructions that adequately guide the jury. *Haslip,* 499 U.S. at 19–20, 111 S.Ct. at 1044. "[A]dequate guidance from the court [to the jury] when the case is tried to a jury properly enter[s] into the constitutional calculus." *Id.* at 17–18, 111 S.Ct. at 1043. The "guidance" referred to in *Haslip* included instructions on the purpose of punitive damages, on consideration of the character and degree of wrong of the defendant, and on the necessity of preventing similar wrong. *Id.* at 6 n. 1, 111 S.Ct. at 1037 n. 1. The instruction *excluded,* as specifically noted by the Supreme Court, any evidence of the defendant's wealth. *Id.* at 19–20, 111 S.Ct. at 1044.

I earlier expressed my concern about the adequacy of the Arkansas pattern jury instruction on punitive damages in *Union Nat'l Bank of Little Rock v. Mosbacher,* 933 F.2d 1440, 1448 (8th Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 870, 116 L.Ed.2d 775 (1992). Essentially this same instruction was used in both *Robertson* cases and, in my view, the content falls well short of the constitutional requirements outlined in *Haslip.* The standardless approach permitted by the Arkansas instruction, coupled with consideration of an improper element (wealth of the defendant), has prompted the jury to "run wild" in this case and no amount of post-trial judicial review can correct the error.

In *Robertson II,* we rejected Phillips' attack on the punitive damages instructions because only a "general objection that the . . . instructions . . . violated the Fourteenth Amendment" was made. *Robertson II,* 930 F.2d at 1347. After a review of the record, I have difficulty perceiving the Fed.R.Civ.P. 51 violation purportedly committed by Phillips.[2] Even if we accept the majority view on this, the constitutional overlay brought into play by *Haslip* dictates that this panel review the adequacy of the Arkansas instruction, adequate objection or not, to bring to an end its

use in violation of the Fourteenth Amendment.

### III.

The most troublesome aspect of the result reached by the majority is the affirmance of a $4,000,000 punitive damages award without an underlying award for compensatory (actual) damages. The law of Arkansas is crystal clear. "[P]unitive damages are not recoverable unless compensatory damages not only have been suffered by the plaintiff but also have been assessed by the jury." *Lake v. Lake,* 262 Ark. 852, 562 S.W.2d 68, 69 (1978).

Upon retrial subsequent to *Robertson I,* the plaintiff chose to proceed upon only two of its theories of recovery, tortious interference with contract and fraud. Of course, according to *Robertson I,* plaintiff had prevailed on the tortious interference theory and had retained a compensatory damages verdict. Thus, the only issue with regard to this theory, as discussed, was punitive findings. Because we said in *Robertson I* that "[e]ach of these theories . . . would support a different amount of punitive damages, depending upon the conduct involved," *Robertson I,* 871 at 1376, the district court submitted the case to the jury on two separate interrogatories dealing with liability (for fraud) and punitive damages (under both theories). A proper analysis of the facts indicates that we were wrong in *Robertson I* and this directed the district court to a faulty approach in the trial leading to *Robertson II.* If all roads do not now lead to Rome for punishment purposes, and we are really dealing with two discrete intentional torts, each separate punitive award must also be supported by a separate compensatory award. The result reached by the majority, is bottomed on this statement: "It is evident that the jury's deliberations were directed to two different torts and two different injuries, each of which supports an award of punitive damages." Majority Opinion at 368. To repeat, if we are really dealing with "two different torts [covering two different time periods as stated by the majority] and two different injuries," *id.,* then

**2.** Federal Rule of Civil Procedure 51 requires that "no party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

we need two different compensatory awards, a circumstance not reached in this case.

With respect, however, I think the separate award theory is simply wrong and a single award of punitive damages, if any are indeed due, is the only logical result that can arise from the core of facts presented to the jury by plaintiff. Any way you massage the events at issue, the ultimate damages occurrence in this case is the "loss of the Spe–Dee Mart account." *Robertson I,* 871 F.2d at 1376. The plaintiff is being compensated for that event and the defendant is being punished for bringing it about.

The majority states that the fraud claim is based upon communications and promises leading up to the October 1984 meeting, but not on the meeting itself. Majority Opinion at 369. On the other hand, it asserts that it is only the meeting itself that supports the tortious interference claim. *Id.* The pre-October communications, however, would not have been actionable at all had the Spe–Dee Mart account stayed with Robertson. Likewise, the October meeting would have led to naught by way of damages had the Spe–Dee Mart account been retained. The district court was correct; "All roads [do] lead to Rome" for both compensatory and punitive purposes.

The majority says, in essence, that even if this is true, Phillips got what it asked for as a result of its arguments in *Robertson I. Id.* at 369. When I read all the contentions advanced by Phillips and put them in the context of the first trial, I reach a very different conclusion. In *Robertson I,* separate theories of tortious interference, fraud, good faith and fair dealing (intentional acts) and negligence, (unintentional acts) were advanced by Robertson. *Robertson I,* 871 F.2d at 1369. Over the objection of Phillips, the jury was permitted to deliberate on punitive damages based upon all of the theories of recovery presented. *Id.* at 1375. We affirmed only the compensatory award on only the theory of tortious interference. *Id.* at 1377. We remanded for retrial on all other theories. We said that on the instructions given and the verdict form submitted, we could not ascertain the basis upon which the jury made its punitive damages decision. *Id.* Phillips advanced this argument and we agreed with the contention. In addition to the reply brief quotations from *Robertson I* set forth in the majority opinion at 1368–69, Phillips also stated as follows:

The jury fixing the punitive damages award found that Phillips had breached its duty of good faith and fair dealing. Cast in the language of Court's Instruction No. 15 [App. 124], this finding said that Phillips had violated "standards of decency, fairness, or reasonableness" as well as "good faith" and "honesty" in the performance of a contract. Post trial, the District Court recognized that a directed verdict should have been granted on Interrogatory No. 3 [App. 66] because Phillips, having made no contract to brand the Spe–Dee Mart Stores, could not have breached duties of good faith, decency, fairness and honesty owed only by a contracting party. Memorandum Opinion, p. 6. Therefore, the jury was permitted to consider breaches of duty defined in the strongest terms (decency, honesty, fairness, and good faith) in arriving at the punitive damages award, when those breaches of duty did not exist as a matter of law.

In light of the District Court's judgment NOV, which has not been appealed, Robertson Oil must argue that whatever conduct is left will now support a $5 million punitive damages award; but this result is contrary to law and manifestly unfair to Phillips. It cannot be ascertained what conduct of Phillips was determined by the jury to merit punishment. Some or all of the punitive damages award may have rested upon Phillips' alleged breach of its duties of decency, honesty, fairness and good faith. Therefore, the general verdict on punitive damages must be reversed, error having been shown. *Dudley v. Dittmer,* 795 F.2d 669, 673 (8th Cir.1986).

In addition, the mere fact that the jury was permitted to assess punitive damages on the basis of negligent conduct should require reversal of the punitive damages award.

Reply Brief of Appellant at 5–6 (footnote omitted).

An argument that portions of the evidence adduced in *Robertson I* could not have supported a punitive damages award and should be separately considered by the jury in its damages determinations on retrial is not, in the least, at odds with the arguments now advanced by Phillips that under the facts of this case two punitive awards are duplicative because, on damages, including punitive damages, all roads do indeed lead to Rome.

Finally, I agree with the district court's analysis of the scope of judicial review of punitive awards under Arkansas practice. Such a review, however, does not, as I have said, save jury awards based upon the faulty Arkansas pattern instruction.

Thus, I would vacate all awards and remand this matter for a new trial on all issues. Short of this, at least a $4,000,000 injustice will have been done.

### ORDER

Jan. 27, 1993.

The suggestion for rehearing en banc is granted. The judgment and opinion filed by the panel are vacated.

This case will be set for argument before the court en banc at a later date.

Chief Judge RICHARD S. ARNOLD and Judge MORRIS S. ARNOLD took no part in the consideration or decision of this case.